**Alvin HUGHES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 46098.**

Court of Criminal Appeals of Texas.

April 25, 1973.

Rehearing Denied May 9, 1973.

James P. Finstrom, Dallas, for appellant.

Henry Wade, Dist. Atty., and Mike McCollum, Asst. Dist. Atty., Dallas, Jim D. Vollers, State's Atty., Robert A. Huttash, Asst. State's Atty., Austin, for the State.

## OPINION

DAVIS, Commissioner.

Appeal is taken from a conviction for robbery. Punishment was assessed by the jury at life.

At the outset, appellant contends that the evidence is insufficient to sustain the conviction, in that it shows the commission of two separate robberies and fails to connect appellant in any manner with the offense charged in the indictment.

The indictment, upon which prosecution is based, charges appellant with the robbery of William B. Scott.

About noon, on August 27, 1970, Scott, Donald Starkes and Will Turner, employees of a beer distributorship, were in the course of making a delivery to the Speedy Market Drive-In Grocery on Pennsylvania Street in Dallas. After determining the amount of beer needed by the Speedy Market, Scott went to the truck to unload the beer, while Turner and Starkes took care of other duties inside the store. When Scott raised the door on the truck, he felt an arm around his neck and an object pressed against his head. Scott was told not to turn around and was asked, "Where is your money?" Starkes decided to go outside to ask Scott how much beer was to be left at the store. When Starkes was within three or four feet of Scott, he noticed that a man was holding a gun at Scott's head. As Starkes turned around to go into the store to call the police, he saw appellant come from around the other side of the truck. Appellant placed a gun against Starkes' forehead and directed Starkes to get over by the side of Scott. Appellant took Starkes' billfold containing $350. The other man took $2,000 belonging to the distributorship from Scott. In addition, Scott lost $150 of his own in the robbery. Scott testified that before the men left, "they said, 'Stand here for five or ten minutes before you leave.'" The two robbers then disappeared behind the beer truck and were heard driving away.

Starkes stated that he had lived in the same neighborhood with appellant for six or seven years and knew him by the name "Butter Dog." Just prior to the stop at the Speedy Market, a delivery had been made at Tom's Grocery Store where Starkes testified he saw appellant and two others seated on the hood of appellant's car, a blue Chevrolet Malibu, with "Butter Dog" stenciled on the side.

Officer Anderson, of the Dallas Police Department, testified that at a time shortly after the robbery, he saw appellant traveling east on Bethurum Street in a blue Malibu Chevrolet with two male companions. Anderson was travelling west and turned to follow appellant.

The short chase which ensued was terminated by appellant bringing his vehicle to a stop. Appellant and his two companions "jumped out of the car running" and eluded Anderson. A billfold found in the abandoned car was identified by Starkes as

the one which was taken from him in the robbery.

■ Appellant argues that the evidence is insufficient to show that he acted as a principal in the robbery of Scott. Appellant correctly asserts that mere presence at the place of the commission of the offense will not constitute one a principal. However, presence is a circumstance tending to prove that a person is a principal, and taken with other facts, may be sufficient to show that he was a participant. Harper v. State, Tex.Cr.App., 477 S.W.2d 31; Childress v. State, Tex.Cr.App., 465 S.W.2d 947; Johnnene v. State, Tex.Cr.App., 417 S.W.2d 64.

The court charged on the law of principals and we find the evidence sufficient to sustain the jury's verdict. Hill v. State, Tex.Cr.App., 466 S.W.2d 791; Gerzin v. State, Tex.Cr.App., 447 S.W.2d 925; McLaughlin v. State, Tex.Cr.App., 426 S.W.2d 244.

Appellant's second contention that a variance exists between the allegation of the indictment alleging that Scott was robbed and the proof which showed that Starkes was robbed is decided adversely to appellant in our disposition of his first contention.

Appellant contends that the trial court erred when it failed to grant appellant's motion for mistrial after argument by the prosecutor that the jury should consider the fact that appellant might be paroled from the penitentiary when setting his punishment.

The record reflects that appellant argued to the jury:

"Should you, as a juror, give this Defendant twenty years in the penitentiary, give him that in 1971, twenty years from today, thirty years—today is a year 1001 (sic). Think where you might be—."

\* \* \* \* \* \*

"When I say be realistic, I think what twenty years means, what thirty years means when you are deliberating about these various functions that punishment is designed to serve. If you punish a man, give him a twenty-year sentence, think how long twenty years is. It's a long time. I don't think any of us would quarrel with that."

Appellant urges that the court erred in not granting his motion for mistrial when the following occurred during the State's argument:

"Now, they have talked to you about sentencing. Now, Mr. Finstrom says thirty years is this long and twenty years is this long. Here again, I am not going to deal at great length with you people, because I believe in your common sense, your common knowledge, and your intelligence. You know or should know that twenty-year sentence in this day and age doesn't mean twenty years, necessarily.

"MR. FINSTROM: Object to that line of argument.

"THE COURT: Sustained.

"MR. FINSTROM: Ask the Jury be instructed to disregard it.

"THE COURT: Jury disregard the last remark of Mr. Whaley. Do not consider it for any purpose.

"MR. FINSTROM: Move for a mistrial.

"THE COURT: Mistrial will be overruled."

\* \* \* \* \* \*

"I still have confidence in the intelligence of this Jury. I think it's a matter of common knowledge that there is in Texas a Board of Pardons and Paroles.

"MR. FINSTROM: Here again, object to argument along the line of the Board of Pardons and Paroles or anything suggestive of this to the Jury.

"THE COURT: Sustained.

"MR. FINSTROM: Jury be instructed to disregard it.

"THE COURT: Jury disregard as to what the State of Texas has and not consider it for any purpose whatsoever.

"MR. FINSTROM: Reurge our Motion for Mistrial.

"THE COURT: Motion of Mistrial is overruled."

■ It is a matter of common knowledge that inmates are released on parole from the Texas Department of Corrections, but the jury, in a felony case, in determining the punishment to be assessed, is not authorized to resort to or apply the parole law. Argument urging them to do so is improper. Graham v. State, Tex.Cr. App., 422 S.W.2d 922.

During the argument of appellant concerning length of punishment, the court instructed the jury, "Ladies and gentlemen, I have instructed you along that point and, of course, you will be bound by the instruction in that case."[1]

■ Appellant first injected the subject of how long twenty or thirty years is in his argument to the jury.

When the prosecutor argued that twenty years doesn't necessarily mean twenty years and that it is a matter of common knowledge that there is in Texas a Board of Pardons and Paroles, appellant's objections were sustained and the jury was instructed to disregard prosecutor's argument. Further, the court reminded the jury of his instruction on the matter.

Under the circumstances presented, we conclude that the refusal of the court to grant a mistrial does not require reversal. See Lenzi v. State, Tex.Cr.App., 456 S.W. 2d 99; Dorsey v. State, Tex.Cr.App., 450 S.W.2d 332; Graham v. State, supra.

■ Appellant contends that the court erred when it failed to grant his motion for mistrial when the prosecutor argued that the name "Butter Dog" indicated that appellant was a slippery character.

Appellant's contention is directed to the following argument:

"Butter Dog. I wonder about that, No one explained it to me. I don't know what it means. Think about it. I have heard of greased pigs. I suggest to you that one who would call himself or permit himself over a period of time to be called Butter Dog leaves himself to be or is believed to be by his friends a slippery character."

The court sustained appellant's objection and instructed the jury to disregard the argument.

Starkes testified that he had never known appellant by any name other than "Butter Dog." Officer Anderson testified that appellant was known by the name of "Butter Dog." Starkes stated that "Butter Dog" was stenciled on appellant's car.

Error, if any, was cured by the court's prompt instruction to disregard the prosecutor's argument.

Appellant contends the court erred in admitting into evidence a void conviction at the penalty stage of the trial.

The complained of judgment and sentence contained in a penitentiary packet reflect that appellant entered a plea of guilty in Criminal District Court No. 2, of Dallas County, on May 25, 1967, in Cause No. C–66–4482–HI, to the offense of "Possession of a firearm by a person convicted of a felony involving use of a firearm" and, upon being found guilty by the court, was assessed punishment of two years.

Appellant urges that no offense is stated in the judgment and sentence and points to Article 489c, Vernon's Ann.P.C., in effect

---

1. In the court's charge, the jury is instructed: "nor should you in deliberating as to the defendant's punishment mention, refer to, discuss or consider how long the defendant would be required to remain in confinement in order to satisfy the punishment imposed by you."

at the time of the conviction in 1967, which provided:

"It shall be unlawful for person who has been convicted [of burglary or robbery, or] of a felony involving an act of violence with a firearm under the laws of the United States or of the State of Texas, or of any other State, [and who has served a term in the penitentiary for such conviction,] to have in his possession away from the premises upon which he lives, any pistol, revolver or any other firearm capable of being concealed upon the person."

The indictment, upon which the complained of judgment and sentence were based, was introduced into evidence by appellant and contains all of the elements of the offense as set forth in Article 489c, V. A.P.C., in effect in 1967.[2]

 The indictment may be considered in construing the judgment and sentence in order to determine the offense for which an accused is convicted. The judgment may be reformed so as to show the offense of which the accused was found guilty by the court and jury. Ex parte King, 156 Tex.Cr.R. 231, 240 S.W.2d 77; Beebe v. State, 99 Tex.Cr.R. 638, 271 S.W. 97.

A judgment or sentence containing an irregularity which may be reformed on appeal or by nunc pro tunc entry is not void, and may not be collaterally attacked. Barker v. State, 169 Tex.Cr.R. 277, 334 S. W.2d 182; Ex parte King, supra.

2. The pertinent portion of the indictment provides:
"Alvin Hughes on or about the 4 day of November in the year of our Lord One Thousand Nine Hundred and 66 in the County and State aforesaid, having theretofore on the 20 day of September, A.D. 1961, in Criminal District Court no. 2 of Dallas County, Texas, cause number D–4568–I, styled the State of Texas vs. Alvin Hughes alias Butter Dog Hughes, been duly and legally convicted of the felony offense of Robbery,

In the instant case, the complained of judgment and sentence, introduced at the penalty stage of the trial, were subject to being reformed on direct appeal or by nunc pro tunc entry. Thus, such judgment and sentence are not subject to collateral attack.

Other contentions found in the appellant's original brief and a pro se brief have been considered and found to be without merit.

Finding no reversible error, the judgment is affirmed.

Opinion approved by the Court.

as charged in the indictment, and pursuant to and for said conviction the said Alvin Hughes did thereafter serve a term in the penitentiary, of the Texas Department of correction (sic) of the State of Texas and was then and there on parole and not then and there discharged and released therefrom did then and there unlawfully have in his possession, away from the premises upon which he lived, a firearm, to wit, a pistol, capable of being concealed upon the person."