In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00220-CR


______________________________




CURT ANTHONY PORTER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 33782-A




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION


 Had he not been stopped by a train, Derrick Kennedy might still be alive today. But he was
stopped, and the ensuing chain of events resulted in Kennedy's death and Curt Anthony Porter's life
imprisonment for that death.

 The record shows Kennedy had stopped near the Tree House Apartments in Longview,
Texas, for a passing train on the evening of September 26, 2005. As Kennedy sat in his car waiting
for the train to pass, Porter approached. Porter had recently purchased a vehicle from Kennedy, but
the car turned out to be a lemon. Porter confronted Kennedy, the two exchanged words, and shortly
thereafter Porter punched the still-seated Kennedy. This prompted Kennedy to exit his vehicle, and
a fight of sorts ensued. Porter would later admit that Kennedy, who was but 5' 6" tall and slightly
built, got the better of the much heavier and 6' 0" tall Porter--ostensibly because Kennedy would
not engage in a "fair" fight, according to Porter. Nevertheless, after the fisticuffs between the two
ended, Porter drew a gun and shot the unarmed Kennedy twice, killing him. 

 A jury found Porter guilty of murder and assessed his punishment at life imprisonment and
a fine of $10,000.00. See Tex. Penal Code Ann. § 19.02 (Vernon 2003) (criminalizing murder and
classifying offense as first-degree felony), § 12.42(c)(1) (Vernon Supp. 2007) (outlining punishment
range for first-degree felonies). Porter now appeals, raising a multitude of issues. After reviewing
the record and hearing oral argument, we overrule Porter's points of error, reform the trial court's
judgment to reflect that Porter's conviction came pursuant to a violation of the Texas Penal Code
(rather than the Texas Property Code), and affirm the trial court's judgment as reformed. We do so
based on a number of logical steps:

 (1) Legally and factually sufficient evidence supports Porter's conviction.

 (2) The State did not necessarily comment on Porter's failure to testify.

 (3) Ineffective assistance of counsel has not been shown.

 (A) Failing to request a charge on sudden passion was not ineffective.

 (B) Counsel's admission, during punishment, that Porter shot Kennedy was
not ineffective.


 (C) Not calling more character witnesses was not ineffective.

 (D) Not objecting to the State's arguments was not ineffective.

 (E) Failure to argue a two-shooter theory during guilt/innocence was not
ineffective.


 (4) Denying Porter's motion for new trial was not error.

 (A) Ineffective assistance of counsel was not established.

 (B) The trial court did not abuse its discretion on the juror misconduct issue.

 (5) Porter's sentence is not cruel and unusual punishment.

 (6) The trial court's judgment is not void, but should be reformed.

 (7) The trial court did not err in failing to issue, sua sponte, a sudden-passion
instruction.

(1) Legally and Factually Sufficient Evidence Supports Porter's Conviction 

 In three points of error, Porter contends the evidence produced at trial is legally and factually
insufficient to support his conviction. We disagree.

 Under a challenge to the legal sufficiency of the evidence, we must consider the evidence
adduced at trial in the light most favorable to the jury's verdict and determine, based on that evidence
and reasonable inferences therefrom, whether a jury could have rationally found the essential
elements of the charged crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307,
318-19 (1979); Powell v. State, 194 S.W.3d 503, 506 (Tex. Crim. App. 2006); McDowell v. State,
235 S.W.3d 294, 296 (Tex. App.--Texarkana 2007, no pet.). In conducting this review, we must
give deference to "the responsibility of the trier of fact fairly to resolve conflicts in testimony, to
weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson,
443 U.S. at 318-19. We should also look at "events occurring before, during and after the
commission of the offense, and may rely on actions of the defendant which show an understanding
and common design to do the prohibited act." Cordova v. State, 698 S.W.2d 107, 111 (Tex. Crim.
App. 1985). Circumstantial evidence is as probative as direct evidence in establishing the guilt of
an actor, and circumstantial evidence alone may be sufficient to establish guilt. Guevara v. State,
152 S.W.3d 45, 49 (Tex. Crim. App. 2004). On appeal, the same standard of review is used for both
circumstantial and direct evidence cases. 

 When reviewing the evidence for factual sufficiency, we review all the evidence admitted
at trial in a neutral light. The evidence supporting a jury's verdict may be factually insufficient if the
evidence supporting the jury's verdict is so weak that the jury's judgment appears clearly wrong or
manifestly unjust or if the evidence supporting the judgment of conviction is outweighed by the great
weight and preponderance of the evidence. Roberts v. State, 220 S.W.3d 521, 524 (Tex. Crim. App.
2007); McDowell, 235 S.W.3d at 296. This factual sufficiency standard requires that we reach "a
high level of skepticism" before we may reverse a jury's verdict based on factual insufficiency. 
Roberts, 220 S.W.3d at 524.

 A person commits the crime of murder in Texas if the actor (1) intentionally or knowingly,
(2) causes the death, (3) of another. Tex. Penal Code Ann. § 19.02(b)(1). The indictment in this
case alleged Porter caused Kennedy's death by shooting him with a firearm. In addition to proving
each element of the charged offense, the State must generally prove that at least one element of the
crime occurred in the county under whose auspices the case is being prosecuted--in this case, Gregg
County. See Tex. Code Crim. Proc. Ann. art. 13.17 (Vernon 2005). To support its burden of
proof, the State offered the testimony of several witnesses and produced several exhibits for the
jury's consideration.

 (a) The State's Evidence

 Ladarius Hodge and Charles Crump both testified that, on the evening of September 26,
2005, they saw Porter and Kennedy fighting near the Tree House Apartments in the south part of
Longview. Both Crump and Hodge told the jury that, once the physical struggle ended, they saw
Porter draw a gun and shoot at Kennedy several times. According to both of these witnesses, Porter
then fled the scene and had caught a ride with Hodge to the home of Porter's girlfriend. (1) Hodge told
the jury that, when Porter got inside the vehicle, Porter was holding a small, dark-colored
revolver--the same gun Hodge testified he had seen Porter use earlier to shoot Kennedy. 

 Hodge had also given police a written statement, which was admitted at trial. This written
statement was consistent with Hodge's trial testimony, but it was inconsistent with Hodge's initial
denial to police of having witnessed any crime whatsoever on the night of the shooting. And like
Hodge, Crump initially denied to police that he had been at the crime scene when Kennedy was shot;
Crump similarly was later more forthcoming to police. 

 Elicia Sanders, a former schoolmate of Porter, was at the Tree House Apartments at the time
of Kennedy's murder. Sanders told the jury that, while she had not heard any gunfire on the evening
of Kennedy's murder, she did see Crump and Porter running from the area where she later learned
a shooting had occurred. She described Porter as being dressed in shorts and wearing a white
sleeveless T-shirt, with a second shirt draped around his neck. 

 Britney McClain told the jury that she and her roommate heard shots being fired in the area
of the apartment complex on the evening in question. McClain said she shortly thereafter saw a
"bigger black male" wearing a sleeveless shirt running across the complex. Another witness, Ginger
Orange, who was also a resident of the apartments, similarly testified that she had seen an "African
American, heavy set" man--who "looked kind of young," wore two shirts (the bottom layer being
a white T-shirt and the top layer being a darker colored shirt), and wore his hair in braids--running
away from the scene of the shooting. During her testimony, McClain told the jury that she saw the
running man drop a small, perhaps silver colored, handgun. The runner then turned around, picked
up the gun, and continued fleeing the crime scene. Both Orange and McClain said the shooter was
ultimately driven away in a car. The State asked neither McClain nor Orange to make an in-court
identification of Porter as being one of the persons they had seen fleeing the apartment complex on
the night of Kennedy's murder.

 Dr. Lynn Salzberger, the medical examiner who autopsied Kennedy, testified the victim died
as a result of being shot twice at close range by a firearm. 

 Detective David Cheatham of the Longview Police Department testified that Kennedy was
shot and killed at Longview's Tree House Apartments, in Gregg County, Texas. Around 9:55 p.m.
on September 26, Cheatham was dispatched to these apartments regarding a shooting. Cheatham's
investigation ultimately led him to consider Porter a suspect in Kennedy's murder. Cheatham located
and arrested Porter September 27 for an outstanding traffic warrant. Once in custody, and after
waiving his Miranda (2) rights, Porter responded to police questioning about Kennedy's murder during
two separate interviews, recordings of which were admitted into evidence and played for the jury.

 During these interviews, Porter told police that he and Kennedy saw each other at the Tree
House Apartments sometime after 8:00 p.m. the evening in question. Porter and Kennedy got into
a dispute over a car that Kennedy had sold Porter and that had begun malfunctioning shortly after
the sale. Porter admitted he and Kennedy then got into a fistfight over the car. But Porter told police
that, once the fight ended, Porter left Kennedy and was taken to his girlfriend's home by Hodge. 
Porter repeatedly denied killing Kennedy or owning or possessing a gun at any time. Porter claimed
he spent that night with his girlfriend and was with her at the time of the murder.

 Porter was able to solicit testimony from Detective Cheatham that Cheatham has little faith
in Hodge and Crump for telling the truth.

 (b) Porter's Evidence

 Sundra Richardson, Porter's girlfriend, testified that Porter came to her home the evening of
September 26, though she was unsure of the time he arrived. Richardson told the jury that she and
Porter talked briefly about Porter having been involved in a confrontation or fight earlier that
evening. She then said Porter had spent the night at her home that night. 

 Richardson told the jury she was shocked when she learned police suspected Porter as
Kennedy's killer. She said she does not believe Porter would kill another human being. She also
testified she had never seen Porter in possession of a firearm. 

 During her direct examination by Porter's trial counsel, Richardson admitted that she is
currently under felony community supervision for a drug conviction. 

 (c) Analyzing Evidentiary Sufficiency

 The testimony from Crump and Hodge is sufficient to establish the necessary elements of
Porter's murder conviction. Additionally, these testimonies were corroborated by other, disinterested
witnesses. For example, while the State asked neither McClain nor Orange to identify Porter in court
as being the same man they had previously seen fleeing the murder scene, the jurors in this case
could easily have concluded that those witnesses' descriptions matched Porter's general physical
appearance at the time of the murder. This is because Porter's custodial interview (which was taken
the day following the murder) shows Porter wearing a sleeveless undershirt, he appears to be
substantially overweight, and he is wearing his hair in braids--all physical characteristics which
Orange and McClain had used to describe Kennedy's killer. Robinson also testified she had seen
Porter in possession of a small gun a few days before Kennedy's murder. We thus conclude the
direct and circumstantial evidence, as well as the reasonable inferences that may be made therefrom,
provide legally sufficient evidence to support the jury's verdict.

 With respect to factual sufficiency, there are several problems with the State's case. First,
several witnesses (most notably Detective Cheatham) characterized Hodge and Crump as liars. Such
characterizations of the State's only eyewitnesses, if believed by the jury, would undoubtedly tend
to discount the weight the jury might accord their testimonies. Second, the police did not recover
any tangible evidence (like a murder weapon, gunshot residue, or something with Porter's
fingerprints) to create a physical evidence connection between Porter to the murder that otherwise
might corroborate the arguably sketchy witness testimony. Third, Richardson testified that Porter
spent the night at her home (although her testimony is unclear as to what time Porter arrived that
evening). On balance, however, we cannot conclude that the evidence supporting the jury's verdict
is so weak that the verdict appears manifestly unjust. Nor can we conclude the evidence supporting
the jury's verdict is outweighed--even marginally--by contrary evidence. Thus, we conclude the
evidence is factually sufficient to support Porter's conviction.

 Porter's points of error urging evidentiary insufficiency are overruled.

(2) The State Did Not Necessarily Comment on Porter's Failure To Testify

 Porter also contends the State twice impermissibly commented on Porter's failure to testify
in his own defense. "It is settled law that neither the trial judge nor the prosecution may comment
on the defendant's failure to testify, and that any such comment violates the Fifth Amendment
privilege against self-incrimination." Cruz v. State, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). To violate the right against self-incrimination, the offending language must be
viewed from the jury's standpoint and the implication that the comment referred to
the defendant's failure to testify must be clear. It is not sufficient that that language
might be construed as an implied or indirect allusion. The test is whether the
language used was manifestly intended or was of such character that the jury would
necessarily and naturally take it as a comment on the defendant's failure to testify. 
In applying this standard, the context in which the comment was made must be
analyzed to determine whether the language used was of such character.


Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

 The first challenged comment by the State occurred during the opening portion of the State's
summation:

We've proven to you that on the 26th day of September, 2005[,] Derrick Kennedy
was shot by a firearm. We don't have the firearm. There's only one person that
knows where the firearm is. We don't have it. We don't have to have it. We're not
talking about casings being hit on the back by a rock. You've got to have a firearm
to discharge it. We've got the casings that went into that young man's body and
ended his life. They were fired intentionally. They were fired knowingly. You don't
accidentally shoot a gun two times at somebody.


(Emphasis added.) The other asserted comment by the State came just before the case was submitted
to the jury:

Now, you heard enough testimony in cross-examination on scientific evidence to
kind of know where that is. Bottom line is, the experts told you what would or
wouldn't show [sic] and what they would need. We can't find the gun and I agree
there is one person that knows where that gun is. You know, what's the facts
surrounding this?


(Emphasis added.) Porter did not object to either argument at trial. 

 In Cruz, the State had argued, "They want to say that it's self-defense. Well, in order to have
self-defense, what has to happen is someone says, 'Yeah, I committed this crime. I committed this
murder. I did this and I intended to do this because I was in fear of my life.'" 225 S.W.3d at 547. 
This State's highest criminal court analyzed the context of that argument and held the State did not
impermissibly comment on the defendant's failure to testify because the argument at issue concerned
the verity of the accused's written statement to police and did not concern anything to which he failed
to testify at trial. Id. at 548-50.

 In the case at bar, we conclude the State's challenged arguments do not comment on Porter's
failure to testify. The State was summarizing all the evidence during the relevant portions of the jury
argument. By the time of closing argument, the jury had already seen videotapes of Porter's custodial
interviews, during which Porter repeatedly denied having ever owned or possessed a gun. Being
mindful of such interview evidence, we conclude that, from the jury's perspective, the State's
challenged arguments amount to reasonable comments on Porter's denials during those custodial
interviews about having ever possessed or owned a gun--claims that, based on the entire tenor of
the closing argument, the State clearly believed to be untrue. Cf. Coleman v. State, 881 S.W.2d 344,
358 (Tex. Crim. App. 1994) (four permissible areas of jury argument include summation of
evidence, reasonable deductions from evidence, answer to argument of opposing counsel, and plea
for law enforcement). The challenged arguments are not comments on Porter's failure to testify at
trial.

(3) Ineffective Assistance of Counsel Has Not Been Shown

 Porter also contends his trial counsel provided ineffective assistance by (a) failing to request
a charge on sudden passion, (b) arguing Porter drew a pistol and shot Kennedy, (c) failing to elicit
available character evidence for the jury's consideration during the punishment phase, (d) failing to
object to the State's closing argument at guilt/innocence, and (e) failing to argue a two-shooter theory
to create reasonable doubt as to Porter's guilt. 

 (a) Failing To Request a Charge on Sudden Passion Was Not Ineffective

 Counsel did not request the trial court's punishment charge include a sudden-passion
instruction. At the hearing on Porter's motion for new trial, counsel admitted that the substance of
his punishment argument concerned a plea for mitigation in that Porter had acted under "sudden
passion." Porter's appellate counsel then asked trial counsel, "[I]f that is indeed what was behind
what you were getting at to the jury would it have not been better practice at the charge conference
on punishment to bring that up and request the court to include that as part of the charge to the jury?" 
Trial counsel responded, "Yes. I agree." Porter's appellate counsel then asked, "Can you give the
Court any reason here today as we sit here in terms of trial strategy or otherwise as to why you would
not have done that?" Trial counsel admitted, "No. I can't give the court a reason why I didn't do
that." This admission by his trial counsel forms Porter's first basis for claiming ineffective assistance
now on appeal.

 In this forum, the State suggests that a sudden-passion instruction would have been
inconsistent with Porter's general theory of the case. The State contends that "[a]n abrupt change in
theory in the midst of trial would not be credible." That may be a good general proposition, but such
an argument ignores the fact that trial counsel did, in fact, change his trial strategy in the middle of
the case--as evidenced by comparing the tenor of his closing argument on guilt/innocence with his
argument at punishment.

 The State also argues that the evidence did not support giving a sudden-passion instruction. 
To be entitled to a sudden-passion instruction, there must be evidence that the defendant caused the
victim's death while the defendant acted "under the immediate influence of sudden passion arising
from an adequate cause." Tex. Penal Code Ann. § 19.02(d) (emphasis added). The Texas Penal
Code further defines "adequate cause" as something "that would commonly produce a degree of
anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind
incapable of cool reflection." Tex. Penal Code Ann. § 19.02(a)(1). 

 In Willis v. State, 936 S.W.2d 302, 305 (Tex. App.--Tyler 1996, pet. ref'd), the defendant
was arguing with his stepson when the latter walked out of their home and broke out the windows
of the defendant's car. Willis then went to another part of the home and retrieved a gun, which the
defendant used to repeatedly shoot his stepson in the back. Id. at 305-06. In his videotaped
confession, Willis testified the shooting was in self-defense. Id. at 306. In holding that the issue of
sudden passion arising from adequate cause was not raised, the Tyler court noted that, in the
videotaped confession, the defendant never stated that the incident caused him to be afraid or angry
or that he acted under any emotional distress, and there was no other testimony to that effect. Id. at
309. Declaring that "we are not free to recognize the requisite heightened emotional state by
implication" and "[i]t is not enough to merely depict the defendant's physical behavior and the
physical context in which it arose," the Tyler court held that the issue simply was not raised. Id.

 In Saldivar v. State, 980 S.W.2d 475, 505 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd),
the defendant contended she was entitled to a charge on sudden passion arising from an adequate
cause because she had become enraged after the victim divulged that the victim's father had accused
Saldivar of embezzlement and lesbianism, which led to a continued argument in a motel room and
immediately escalated into a killing. Id. In holding that sudden passion arising from an adequate
cause was not raised, the Houston court admitted the victim initially provoked the defendant's anger. 
Id. at 506. However, the appellate court concluded Saldivar's testimony did not amount to evidence
of the extreme emotional and psychological state for which the definitions of sudden passion and
adequate cause call. Id. The court noted that, to justify a charge on sudden passion arising from an
adequate cause, the defendant's reactions to the triggering provocations must be an objectively
common response that an ordinary, reasonable person would make. Id. An aberrational response
to a stimulus that results in death will not meet the statutory definitions under chapter nineteen of
the Texas Penal Code. Id. In reaching its holding, the court stated, "Shooting an employer and
friend in the back as she walks away from an argument is not an objectively common response in
an ordinary reasonable person." Id.

 In this case, there is no evidence that the previous fight between Kennedy and Porter would
have produced a degree of anger, rage, or resentment in a person of ordinary temper to the necessary
degree that would cause such an ordinary person to lose his or her sensibilities and instinctively
respond by drawing a pistol and shooting Kennedy--especially when all the eyewitnesses said Porter
shot Kennedy after the fight had ended and the two had physically separated. In fact, during Porter's
jailhouse interviews, he repeatedly states he was unafraid of Kennedy (in light of the size differential
between the two) and was an otherwise peaceable man. Finally, Porter's own statement to police
shows he was the aggressor in the initial confrontation, a factor that some courts have said deprives
a murderer of the right to claim self-defense. See, e.g., Westbrook v. State, 846 S.W.2d 155, 159
(Tex. App.--Fort Worth 1993, no pet.) (defendant not entitled to sudden-passion instruction when
evidence showed he was initial aggressor).

 Because no evidence supports any claim that the shooting was produced by an adequate
cause, Porter would not have been entitled to an instruction on sudden passion. Cf. Adanandus v.
State, 866 S.W.2d 210, 230-31 (Tex. Crim. App. 1993) (evidence showed defendant shot victim
after scuffle between two had ended; victim in prone position and defendant in upright position when
fatal shot fired). Ineffective assistance based on this claim is unsupported by the record.

 (b) Counsel's Admission, During Punishment, that Porter Shot Kennedy Was Not
Ineffective


 Defense counsel's theory of the case during guilt/innocence was that Porter did not shoot
Kennedy. Counsel's theory of the case changed, however, once the trial went into the punishment
phase. In his punishment summation, Porter's trial counsel assumed the shooting and sought to
mitigate blame:

At some point, [Porter] snaps, loses his temper completely. Now, that's what
happens when you mix young men and firearms and violent physical confrontations. 
People lose their temper, they snap, they do things that on sober reflection they'd
never do. So that's what we have. We have one moment of extreme anger. And I'm
not putting all the blame on Derrick Kennedy. I'm not putting all the blame on Curt
Porter either, but what he did was wrong and deserves the punishment.


On appeal, Porter now argues that counsel's argument during punishment amounted to ineffective
assistance because such argument amounted to an admission of the crime.


 It is not unreasonable for a trial attorney to accept the jury's verdict on guilt/innocence and
try to mitigate punishment by arguing that the facts show the defendant acted not out of cold-bloodedness, but out of sudden whim. Such an argument might persuade a jury to assess punishment
at the lower end of the applicable sentencing range. The fact that such an argument did not work
here does not necessarily mean that the argument was devoid of a reasonable trial strategy; the result
(of Porter receiving a maximum punishment) merely means counsel's trial strategy did not work. 
We cannot say that no reasonable attorney would have employed such a strategy. As such, we
cannot conclude the record on this issue will support a finding of ineffective assistance.

 (c) Not Calling More Character Witnesses Was Not Ineffective

 Porter also claims he received ineffective assistance at trial because his trial counsel failed
to call more than one character witness on his behalf during punishment. The appellate record
shows that, during punishment, Porter's trial counsel called but one witness, Reverend Adrian Porter. 
At the hearing on Porter's motion for new trial, Porter called several more witnesses, each of whom
testified that he or she would have testified as character witnesses on Porter's behalf at the
punishment trial, if only they had been called. Porter's trial counsel explained that he called none
of these witnesses because he had instructed them each to be at Porter's trial by 8:30 on the morning
of the punishment trial and that none, except for Reverend Porter, arrived until after 9:00, which was
well after the punishment trial had begun. Because of their untimely arrival, Porter's trial counsel
did not have the opportunity to discuss their potential testimonies before calling them to the witness
stand. Additionally, the at-issue witnesses came into the courtroom during Reverend Porter's
testimony, "the rule" had been invoked by both sides in this case, and these witnesses had listened
to part of Reverend Porter's testimony. Porter's trial counsel testified to his belief that, by hearing
Reverend Porter's testimony, each witness had violated "the rule" and thus would have been excluded
by the State had Porter's trial counsel attempted to call any of them to testify. The only character
witness who had not violated "the rule" and who was in court at the proper time, Reverend Porter,
did testify on behalf of the accused. 

 The explanation by Porter's trial counsel on this issue portrays a reasoned trial strategy. 
While a different lawyer might have sought a waiver of "the rule" for these witnesses, there is no
evidence in the record that either the trial court or the elected district attorney (who was the lead
prosecutor in this case) would have allowed the witnesses to testify. We conclude the record before
us does not support Porter's claim of ineffective assistance on this issue.

 (d) Not Objecting to the State's Arguments Was Not Ineffective

 Porter next contends he received ineffective assistance from his trial counsel because the
latter did not object to the State's closing argument during guilt/innocence. The State's challenged
statements in this sub-issue are the same statements made by the State that were the subject of
Porter's point of error asserting that the State commented on Porter's failure to testify.

 We have already addressed the appropriateness of the State's challenged arguments during
guilt/innocence, and found that they presented no reversible error. Accordingly, we similarly
conclude Porter's trial counsel did not render ineffective assistance by failing to object to the State's
challenged arguments because such arguments (when viewed in context and from the perspective
of the jury) did not necessarily comment on Porter's failure to testify at trial, but instead permissibly
commented on evidence contained in Porter's custodial interviews.

 (e) Failure to Argue a Two-Shooter Theory During Guilt/Innocence Was Not Ineffective

 Finally, Porter contends his trial counsel provided ineffective assistance by failing "to argue
to the jury that the two bullets and two wounds raised a reasonable doubt about Appellant's guilt,
because that evidence points to the presence of two weapons and two assailants, not to Appellant." 

 The substance of an attorney's closing argument is inherently a product of trial strategy. See
generally Ramirez v. State, 229 S.W.3d 725, 730-31 (Tex. App.--San Antonio 2007, no pet.). 
Porter's trial counsel argued that the evidence was insufficient because the State's witnesses were
incredible, an argument that is both common among the defense bar of this state and entirely
reasonable based on the notable testimony adduced at trial on the lack of credibility of both Hodge
and Crump, the State's primary witnesses. Now, with the advantage of hindsight, appellate counsel
would now present a different theory of the case in an effort to create reasonable doubt among the
jurors' minds. Simply because a jury did not buy into a defense strategy does not mean the strategy
was flawed or substandard. Finally, we note that, even if we accepted Porter's claim that his trial
counsel's argument fell below professional norms, the record before us provides no evidence that
such argument necessarily prejudiced Porter. Cf. Ex parte McFarland, 163 S.W.3d 743, 758 n.50
(Tex. Crim. App. 2005) (capital murder habeas applicant did not demonstrate record established that,
but for counsel's allegedly inadequate closing argument, jury would have answered special issues
differently).

 We overrule this point of error.

(4) Denying Porter's Motion for New Trial Was Not Error

 Porter also contends the trial court erred by overruling his motion for new trial. Porter's
motion for new trial raised two issues: (A) ineffective assistance of trial counsel and (B) juror
misconduct. The trial court heard testimony on both issues at an evidentiary hearing on Porter's
motion. At the conclusion of the hearing, the trial court took the matter under advisement and later
summarily denied the motion without explanation. Porter now asserts the trial court should have
granted a new trial based on the proof of either ineffective assistance or juror misconduct.

 We review a trial court's ruling on a motion for new trial for abuse of discretion. Salazar v.
State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). It should also be noted, however, that "both the
performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and
fact." Strickland v. Washington, 466 U.S. 668, 698 (1984); see also Williams v. Taylor, 529 U.S.
362, 419 (2000). Therefore, although we generally use an abuse-of-discretion standard to review
decisions to grant or deny motions for new trial, we are not bound by the trial court's conclusion
regarding effectiveness of counsel. See Strickland, 466 U.S. at 698; Johnson v. State, 169 S.W.3d
223, 239 (Tex. Crim. App. 2005). If the trial court is not in an appreciably better position than the
appellate court to determine an issue of ineffective assistance, the reviewing court may independently
determine the issue while necessarily affording deference to the trial court's factual findings. Miller
v. Fenton, 474 U.S. 104, 117 (1985); Villarreal v. State, 935 S.W.2d 134, 139 (Tex. Crim. App.
1996) (McCormick, P.J., concurring). 

 (a) Ineffective Assistance of Counsel Was Not Established

 We have addressed Porter's claims of ineffective assistance on their merits. On the same
basis as we stated above, we conclude the trial court was not bound to find ineffective assistance. 
We, therefore, conclude the trial court did not err by denying Porter's motion for new trial to the
extent that it was based on a claim of ineffective assistance of counsel.

 (b) The Trial Court Did Not Abuse Its Discretion on the Juror Misconduct Issue

 To his motion for new trial Porter attached affidavits from several trial spectators. The first,
Raven Covy, is Porter's fiancé. Covy testified that she observed one of Porter's jurors sleeping
during the trial. Another spectator, Vivian Porter, testified that he saw some of the jurors sleeping
during his grandson's trial. Porter's mother, Tumar Porter, similarly testified to having seen sleeping
jurors. 

 The trial court was in the best position to evaluate the credibility of the witnesses on this
issue and could also rely on its independent memory and observations of the jurors during trial. As
the trial court's decision to deny Porter's motion for new trial could have been based on either its
determination of witness credibility or the court's independent recollection of events (or both), and
because the trial court was in an appreciably better position both to determine witness credibility and
to observe the now at-issue jurors during trial, we must defer to such a determination and overrule
Porter's claim of error.

(5) Porter's Sentence Is Not Cruel and Unusual Punishment

 Porter also contends the jury's assessment of his punishment at life imprisonment constitutes
cruel and unusual punishment. Several considerations require us to overrule this contention.

 First, Porter's punishment fell within the range authorized by our law. He was convicted of
murdering Kennedy by shooting him with a firearm. Murder is a first-degree felony. See Tex.
Penal Code Ann. § 19.02(c). The punishment range for a first-degree felony is imprisonment for
life or for any term not more than ninety-nine years or less than five years. See Tex. Penal Code
Ann. § 12.32(a) (Vernon 2003). "Texas courts have traditionally held that as long as the punishment
is within the range prescribed by the Texas Legislature, the punishment is not excessive, cruel, or
unusual." Sierra v. State, 157 S.W.3d 52, 65 (Tex. App.--Fort Worth 2004), aff'd, 218 S.W.3d 85
(Tex. Crim. App. 2007); see also Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973);
Alberto v. State, 100 S.W.3d 528, 529 (Tex. App.--Texarkana 2003, no pet.). Because Porter's life
sentence fell within the statutory punishment range, his claim that his sentence constitutes cruel and
unusual punishment--and thereby violates the Eighth Amendment to the United States
Constitution--lacks support in our jurisprudence. See U.S. Const. amend. VIII.

 Second, to determine whether Porter's life sentence is cruel, unusual, or similarly
disproportionate, evidence in the appellate record would be needed regarding what sentences other
Texas defendants have received for murder. See Harmelin v. Michigan, 501 U.S. 957 (1991); Solem
v. Helm, 463 U.S. 277, 292 (1983). There is no such evidence in this appellate record. Nor is there
is any evidence in the appellate record of what sentences other defendants in other states have
received for murder. See Solem, 463 U.S. at 292. Thus, even if we were to ignore the appellate
jurisprudence of this State and conclude that a life sentence is necessarily too severe a punishment
to assess against someone convicted of murder, the appellate record contains insufficient evidence
for use in analyzing the remaining Solem factors to determine whether Porter's appellate record will
support a challenge to his sentence under the Eighth Amendment. Cf. Guin v. State, 209 S.W.3d
682, 687-88 (Tex. App.--Texarkana 2006, no pet.); Williamson v. State, 175 S.W.3d 522, 525 (Tex.
App.--Texarkana 2005, no pet.); Alberto, 100 S.W.3d at 530.

 Finally, the United States Supreme Court has repeatedly stated that the determination of
appropriate punishment ranges for felony offenses is a matter of legislative prerogative. See, e.g.,
Harmelin, 501 U.S. at 962 (Scalia, J., writing for the majority). To the extent Porter asks this Court
to effectively rewrite this State's punishment laws, we decline the invitation. Because Porter's
sentence fell within the applicable punishment range, his punishment presumptively passes muster
under the Eighth Amendment.

(6) The Trial Court's Judgment Is Not Void, But Should be Reformed

 Porter also contends "[t]he trial court reversibly erred when, in its judgment, it imposed
sentence under section 19.02(b)(1), Texas Property Code, thereby having no jurisdiction to
pronounce sentence, and, therefore, the judgment is void and of no effect." (Emphasis added.) 
While the written judgment cites to a nonexistent Section 19.02(b)(1) of the Texas Property Code,
the remainder of the judgment makes clear that Porter was convicted of murder. See Tex. Penal
Code Ann. § 19.02(b)(1) (one way to commit murder). The State contends the judgment's reference
to the Texas Property Code is merely a clerical error that can be reformed either on appeal or through
a nunc pro tunc judgment entered by the trial court. (3) 

 The State is correct. The trial court's judgment referencing Article 19.02 of the Texas
Property Code, rather than Section 19.02 of the Texas Penal Code, amounts to a mere clerical error
and is not the product of judicial reasoning. See Dudley, 223 S.W.3d at 722; and contrast Harris
v. State, 153 S.W.3d 394, 396-97 (Tex. Crim. App. 2005) (trial court's decision to increase sentence
by fifteen years after first sentence vacated on appeal, not permissible correction of unauthorized
sentence nor permitted revision of judgment via nunc pro tunc). We have the authority to reform
the trial court's judgment to reflect that the jury found Porter guilty of murder in violation of Section
19.02 of the Texas Penal Code. See, e.g., French v. State, 830 S.W.2d 607 (Tex. Crim. App. 1992);
Gonzalez v. State, 527 S.W.2d 540, 541 n.1 (Tex. Crim. App. 1975). Accordingly, the trial court's
judgment is reformed to reflect Porter was convicted for violating the Texas Penal Code rather than
the Texas Property Code. We otherwise overrule this point of error.

(7) The Trial Court Did Not Err in Failing to Issue, Sua Sponte, a Sudden-Passion Instruction

 Finally, Porter contends the trial court erred by failing to, sua sponte, instruct the jury on
sudden passion. We disagree.

 "If a defendant is convicted of murder, he or she may argue at punishment that he or she
caused the death of the victim while under the immediate influence of sudden passion arising from
adequate cause." Bradshaw v. State, No. 06-06-00178-CR, 2007 WL 4224853, at *1 (Tex.
App.--Texarkana Dec. 3, 2007, no pet.). "If a defendant establishes by a preponderance of the
evidence that he or she did so, the offense level is reduced from a first-degree to a second-degree
felony." Id. (citing Tex. Penal Code Ann. § 19.02; Trevino v. State, 100 S.W.3d 232, 237 (Tex.
Crim. App. 2003)). "'Sudden passion' means passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed which passion arises at
the time of the offense and is not solely the result of former provocation." Tex. Penal Code Ann.
§ 19.02(a)(2). "Adequate cause" is that "cause that would commonly produce a degree of anger,
rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of
cool reflection." Tex. Penal Code Ann. § 19.02(a)(1).

 In this case, the trial court could have reasonably concluded the evidence did not warrant a
sudden-passion instruction. Porter was the initial aggressor in the fight precipitating Kennedy's
death. Porter introduced a deadly weapon into the fracas. After he and Kennedy ended their scuffle,
Porter drew a gun and shot the unarmed Kennedy. Porter did not testify that he had acted out of
sudden fear, anger, or other emotion that was so intense that neither he nor any other normal human
being could have overcome such passion. Therefore, without such evidence coming from Porter or
some other source, the trial court had no evidence before it to mandate a sudden-passion instruction. 
We conclude the trial court did not err by failing to so instruct the jury.

 We reform the trial court's judgment to substitute "Penal Code" for "Property Code" and
affirm the judgment as reformed.


 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 13, 2008

Date Decided: March 10, 2008


Do Not Publish


1. Crump testified that he called 9-1-1 for an ambulance following the shooting. Several others
testified about calling 9-1-1 after hearing the shooting. 
2. Miranda v. Arizona, 384 U.S. 436 (1966).
3. Neither party to this appeal has directed the Gregg County District Clerk to supplement the
record with a nunc pro tunc judgment from the trial court. See Hughes v. State, 493 S.W.2d 166,
170 (Tex. Crim. App. 1973) (trial court may issue judgment nunc pro tunc to correct clerical error);
State v. Dudley, 223 S.W.3d 717, 721-22 (Tex. App.--Tyler 2007, no pet.) (nunc pro tunc is correct
method for trial court to correct errors in judgment that are not product of judicial reasoning); see
also Tex. R. App. P. 34.5(c) (any party may request supplementation of appellate record). 
Accordingly, we assume this issue has not been made moot by the trial court's issuance of a corrected
judgment.