**Ross Earl WILLIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 12–94–00016–CR.**

Court of Appeals of Texas,
Tyler.

May 31, 1996.

Discretionary Review Refused
Nov. 27, 1996.

---

HADDEN, Justice.

Appellant was convicted by a jury of the offense of murder. Punishment was assessed at life confinement in the Texas Department of Criminal Justice, Institutional Division, and a fine of $10,000. Appellant raises four points of error on appeal. We will affirm.

The record reflects that on January 12, 1993, Appellant shot his stepson, Johnny West, Jr. ("West"), over a disagreement about a vehicle. Prior to the shooting, Appellant was in the process of selling a car to West. West had paid Appellant $200 of the $300 purchase price; however, West had not paid the remaining $100 because Appellant did not have clear title to the car. Appellant's ex-wife, Diane Willis ("Diane"), testified that on the date of the shooting, Appellant became angry about West's failure to pay the balance, and asked for the keys to the car. Diane obtained the keys for Appellant. West later asked Appellant to give back the keys, but Appellant refused. Appellant claimed that he would not give West the keys because he did not have insurance on the car, and because he believed that West was using the car to transport drugs. West finally asked for a refund of his purchase money, but Appellant also refused that request.

After this conversation with Appellant, West walked out of the house and smashed the windows of the car with a brick. He also broke a window in Appellant's van. West then went back inside the house to his sisters' bedroom. Appellant called 911 to report that someone was breaking into his car, and then walked outside to inspect the damage. Shortly thereafter, Appellant retrieved a gun from his and Diane's bedroom, and walked into his stepdaughters' bedroom. West was standing near the closet. Appellant shot West repeatedly, and the wounded West collapsed inside the closet.

The shooting was witnessed by West's sister, LaSonya, who called out to Diane. Diane begged Appellant not to shoot West anymore, but Appellant shot West again. Diane then retrieved a gun, and ordered her other children to lock themselves in her bedroom and call 911. She went back into the bed-

F.R. Files, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

room with Appellant, and asked him to put the gun down and to stop shooting. Instead, Appellant turned and pointed the gun at Diane. Diane then shot Appellant, and Appellant fell in front of the closet where West lay. Before LaSonya or Diane could get the gun away from Appellant, he shot West again. Forensic evidence indicated that West died from several gunshot wounds in the back.

Both LaSonya and Diane testified that they had not seen West threaten Appellant in any manner prior to the shooting, and no gun was found in the closet near West's body. Officer Beverly Grage stated that none of the evidence indicated that West had a weapon, and no other weapons were found at the scene. However, Appellant testified in his videotaped statement that West had a .25 caliber pistol when Appellant entered the bedroom to talk to him about the car. According to Appellant, West told him that he would "finish what he started" three years ago, referring to an incident in which West stabbed Appellant. Appellant then turned his back to look out the window for the police, and he felt a bullet go by his head. He stated that the bullet may have been fired by either West or Diane. Appellant turned back towards West and shot him three or four times.

■ In his first point of error, Appellant contends that the trial court erred in instructing the jury on the law of "provoking the difficulty." The jury was charged as follows:

### 15.

You are further instructed as part of the law of this case, and as a qualification of the law on self defense, that the use of force by a defendant against another is not justified if the defendant provoked the other's use or attempted use of unlawful force, unless

(a) the defendant abandons the encounter, or clearly communicates to the other his intent to do so reasonably believing he cannot safely abandon the encounter; and

(b) the other person, nevertheless, continues or attempts to use unlawful force against the defendant.

So, in this case, if you find and believe from the evidence beyond a reasonable doubt that the defendant, ROSS EARL WILLIS, immediately before the difficulty, if any, then and there did some act, or used some language, or did both, as the case may be, with the intent on his, the defendant's part, to produce the occasion for shooting the deceased, JOHNNY RAY WEST, JR., and to bring on the difficulty with JOHNNY RAY WEST, JR., and that such words and conduct on defendant's part, if there were such, were reasonably calculated to, and did, provoke a difficulty, and that on such occasion JOHNNY RAY WEST, JR. attacked defendant with deadly force, or reasonably appeared to defendant to so attack him or to be attempting to so attack him, and that the defendant then shot the said JOHNNY RAY WEST, JR . . . . in pursuance of his original design, if you find there was such, then you will find against the defendant on the issue of self defense.

On the other hand, if you find from the evidence that the acts done or language used by the defendant, if any, were not, under the circumstances, reasonably calculated or intended to provoke a difficulty or an attack by JOHNNY RAY WEST, JR. upon the defendant, or if you have a reasonable doubt thereof, then in such event, defendant's right of self defense would in no wise be abridged, impaired, or lessened, and, if you so find, or if you have a reasonable doubt thereof, you will decide the issue of self defense in accordance with the law on that subject given in other portions of this charge, wholly disregarding and without reference to the law on the subject of provoking the difficulty.

■ Appellant argues that there was no evidence to warrant the submission of this instruction. The issue of whether Appellant's conduct was reasonably calculated to provoke the difficulty is a question of fact for jury determination, under appropriate instructions from the court. *Garcia v. State*, 522 S.W.2d 203, 206 (Tex.Cr.App.1975). A

"provocation" instruction is used to inform the jury that if they find that the defendant provoked the difficulty in order to have a pretext to kill or injure the victim, then the defendant forfeits his right of self-defense. *Lee v. State,* 903 S.W.2d 845, 848 (Tex.App.—Beaumont 1995, n.p.h.). A charge on "provoking the difficulty" is properly given if:

1. Self-defense is an issue;

2. There are facts in evidence which show that the victim/deceased made the first attack on the defendant;

3. The defendant did some act or used some words intended to and calculated to bring on the difficulty in order to have a pretext for inflicting injury on the victim/deceased.

*Matthews v. State,* 708 S.W.2d 835, 837–38 (Tex.Cr.App.1986); *Williamson v. State,* 672 S.W.2d 484, 486 (Tex.Cr.App.1984). Our review is limited to determining whether any evidence exists which raises this issue. *Ramirez v. State,* 873 S.W.2d 757, 761 (Tex. App.—El Paso 1994, pet. ref'd), *citing Matthews,* 708 S.W.2d at 838.

We have reviewed the evidence and conclude that it supports the trial court's submission of the "provoking the difficulty" instruction. The record shows that Appellant took West's keys to the car, and then refused to give them back. He also refused to give him a refund for the car. In response, West smashed the windows in the car and in Appellant's van. When West came back into the house, Appellant retrieved a pistol and went to talk to West. According to Appellant, West stated that he would "finish what he started," and then Appellant felt a bullet fly by his head. Appellant then turned and shot West several times. Other witnesses testified that Appellant later shot West several more times, refusing to put down the gun. He even shot West after he had been shot himself by Diane.

Clearly, all the factors set forth in *Matthews* and *Williamson* are present in the evidence. Self-defense was raised by the testimony of Appellant, who claimed that he shot West only after West first threatened him and shot at him. The jury was also properly instructed on the issue of self-defense. The second element is, likewise, supported by the evidence. Appellant testified that West made the first assault by threatening to "finish what he started," and then purportedly shot at Appellant. Finally, there is evidence in the record that Appellant provoked the encounter. By taking West's car keys and refusing to refund his money for the car, and then by following him into the bedroom with a gun, Appellant clearly brought on and provoked the difficulty which Appellant used as a pretext to attack and shoot West. While it is true that West reacted by smashing the windows in the vehicles and allegedly retrieving a gun, he obviously was not the responsible party who provoked this violent incident. We hold that the evidence fulfills the requirements of *Matthews* and *Williamson,* and that the inclusion of the "provocation" issue in the charge was justified. Point one is overruled.

■ In his second point of error, Appellant asserts that the trial court erred in failing to charge the jury on the lesser included offense of voluntary manslaughter. It is error for a trial judge to refuse to submit a charge on a lesser included offense when:

1) the lesser included offense is included within the proof necessary to establish the offense charged, and

2) there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty he is guilty only of the lesser offense.

*Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Cr.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). The standard of review set out in *Rousseau* requires only "some evidence" establishing voluntary manslaughter. When the issue to be decided is whether a court failed to instruct a jury on a lesser included offense, the weight and credibility of the accused's version of events is not to be addressed. *Mendivil v. State,* 812 S.W.2d 629, 631 (Tex.App.—El Paso 1991, no pet.). A reviewing court must then look to all the evidence to determine whether any scenario presented will support the requested charge, since the "jury may accept or reject all or a part of any witness's testimony, including that of the defendant."

*Merchant v. State*, 810 S.W.2d 305, 309 (Tex. App.—Dallas 1991, pet. ref'd).

■ At the time of the offense and trial, voluntary manslaughter was defined as a homicide that would ordinarily be considered murder, but for the fact that the death was caused under the immediate influence of sudden passion arising from an adequate cause. *See* Acts 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex.Gen.Laws 883, 913, *amended by* Acts 1973, 63rd Leg., R.S., ch. 426, art. 2, § 1, 1973 Tex.Gen.Laws 1123, 1124 *and repealed by* Acts 1993, 73rd Leg., R.S., ch. 900, Sec. 1.01, 1993 Tex.Gen.Laws 3589, 3617 [former Tex.Penal Code Ann. § 19.04(a) ][1]. Voluntary manslaughter is a lesser included offense of murder only if there is some evidence of sudden passion in the case arising from adequate cause. *Westbrook v. State*, 846 S.W.2d 155, 159 (Tex.App.—Fort Worth 1993, no pet.). *See also State v. Lee*, 818 S.W.2d 778, 782 (Tex.Cr.App.1991). Both "adequate cause" and "sudden passion" are defined in the Penal Code as follows:

(1) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

(2) "Sudden passion" means passion directly caused by ... the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

Tex.Penal Code Ann. § 19.02(a)(1) & (2) (Vernon 1994) [former Tex.Penal Code Ann. §§ 19.04(c) & 19.04(b), respectively].

■ With respect to "sudden passion," the cases are clear that something more than the presence of simple fear is required. *Gonzales v. State*, 717 S.W.2d 355, 357–58 (Tex.Cr.App.1986). For a claim of fear to rise to the level of sudden passion, there must be evidence that the defendant's state of mind rendered him incapable of cool reflection. *Daniels v. State*, 645 S.W.2d 459 (Tex.Cr.App.1983). A voluntary manslaughter charge should not be given absent "some evidence of the condition of the accused's mind at the time of the offense." *Merchant*, 810 S.W.2d at 310. One is "not free to recognize the requisite heightened emotional state by implication." *Mendivil*, 812 S.W.2d at 630.

■ The record in this case contains no direct evidence that Appellant killed West under the immediate influence of sudden passion arising from an adequate cause. Appellant argues that West's breaking of the windows in the car and the van prompted Appellant to act in the heat of passion. Appellant may have been in an excited state after West broke the windows. But simple excitement caused by the breaking of the windows does not, in itself, provide evidence of the extreme emotional and psychological state defining "sudden passion." *E.g., Corral v. State*, 900 S.W.2d 914, 919 (Tex.App.—El Paso 1995, no pet.)(throwing rocks at defendant and making gang signs are not adequate provocation to justify a killing). The murderous acts of one not of ordinary temper or whose response to the alleged cause is not objectively common in the ordinary, reasonable person does not support a voluntary manslaughter issue. *Lopez v. State*, 716 S.W.2d 127, 129 (Tex.App.—El Paso 1986, pet. ref'd). In other words, voluntary manslaughter is not available to one whose actual emotional responses are aberrational in this society. *Id.* The breaking of one's car windows is not adequate in this society to justify a killing. Without legally adequate cause, no amount of subjective passion will justify submission of voluntary manslaughter. *See Corral*, 900 S.W.2d at 919; *see also Provost v. State*, 514 S.W.2d 269 (Tex.Cr.App.1974).

■ Moreover, the instruction was not necessary since Appellant originally provoked the situation leading up to the shooting by refusing to relinquish the keys or to

---

**1.** As of September 1, 1994, voluntary manslaughter is no longer a separate offense under the Texas Penal Code. Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex.Gen.Laws 3589, 3617. Instead, it is now merely a punishment issue in a murder case. *See* Tex.Penal Code Ann. § 19.02(d) (Vernon 1994). However, since both the offense and the trial occurred before the effective date of the change, voluntary manslaughter would have been considered a lesser included offense to murder at this trial.

refund West's money. The provocation must not have been itself provoked by the person seeking to avail himself of the plea of involuntary manslaughter. *Westbrook,* 846 S.W.2d at 159. When Appellant creates the circumstances which inflame his passion, a charge on voluntary manslaughter is not required. *Id.*

 Even Appellant's statement did not demonstrate such a sudden passion arising from adequate cause. Appellant never stated that the incident caused him to be afraid or angry, or that he acted under any emotional distress. It is not enough to merely depict the defendant's physical behavior and the physical context in which it arose. *Gonzales,* 717 S.W.2d at 357. There was no testimony by defendant or any other witness which described his mental or emotional state. Appellant simply stated that he turned and shot West three or four times. Appellant's statement describing the incident did not indicate any degree of "anger, rage, resentment, or terror in a person of ordinary temper" necessary to create "adequate cause," *see* Tex.Penal Code Ann. § 19.02(a)(1), and we are not free to recognize the requisite heightened emotional state by implication. *Ramirez,* 873 S.W.2d at 760; *Mendivil,* 812 S.W.2d at 630.

The present case is analytically akin to *Gonzales, supra.* In that case, there was no testimony indicating that the defendant was emotionally aroused at the time of the shooting. The evidence showed that the defendant witnessed a confrontation between his friend and the victim at a nightclub. He then walked outside and retrieved his friend's gun. The victim then came up behind him and fired a shot, so defendant turned and shot the victim repeatedly. The defendant indicated that he was scared of the victim, but there was no evidence that the defendant became enraged, terrified, or resentful. The Court of Criminal Appeals held that, based upon the evidence, the defendant was not entitled to an instruction on voluntary manslaughter. *Gonzales,* 717 S.W.2d at 357. The Court noted that it is incorrect to assume that a defendant feels sudden passion whenever the soon-to-be deceased victim provokes the defendant with a gun. *Id.* Absent evidence of rage, resentment, terror or other emotional arousal, no instruction is necessary. *Id.*

Similarly, in the present case, the evidence lacks any specific indication that Appellant experienced the requisite emotional arousal either before or after the shooting. There was no evidence showing that Appellant's mental state called for an instruction on voluntary manslaughter. *Cf. Mendivil,* 812 S.W.2d at 630–31 (defendant's use of the terms "shock," "insane," and "berserk" showed sudden passion); *Merchant,* 810 S.W.2d at 311 (testimony that defendant feared for his life indicated sudden passion). Therefore, the trial court did not err in excluding the instruction.

 Appellant also argues that the sudden passion arose from West's statement that he would "finish what he started," referring to a stabbing incident which occurred in 1988. However, evidence of passion arising from the prior stabbing incident, which occurred several years before the shooting, would not be sufficient to support the submission of a voluntary manslaughter charge. The sudden passion must be directly caused by and arising out of provocation by the deceased at the time of the offense. Evidence of prior arguments or discord will not establish the needed provocation. *McIntosh v. State,* 855 S.W.2d 753, 762 (Tex.App.—Dallas 1993, pet. ref'd). Passion resulting from former provocation is insufficient. *Hobson v. State,* 644 S.W.2d 473, 478 (Tex. Cr.App.1983). Therefore, we hold that the trial court did not err in denying Appellant's requested instruction. Point two is overruled.

 In point three, Appellant contends that the trial court erred in granting the State's challenge for cause to Rudolph Phillips. He argues that the State did not show sufficient bias to sustain the challenge under Article 35.16(a)(9) of the Texas Code of Criminal Procedure.

Article 35.16 sets forth the reasons for which both sides may make a challenge for cause, and states, in pertinent part, as follows:

(a) ... A challenge for cause may be made by either the state or the defense for any one of the following reasons:

. . . . .

(9) That he has a bias or prejudice in favor of or against the defendant; ...

TEX.CODE CRIM.PROC.ANN. art. 35.16(a)(9) (Vernon 1989).

 Bias exists as a matter of law when a prospective juror admits that he is biased for or against a defendant. *See Anderson v. State,* 633 S.W.2d 851, 854 (Tex. Cr.App.1982). When a veniremember is shown to be biased as a matter of law, he must be excused when challenged, even if he states that he can set his bias aside and provide a fair trial. *Id.; see Smith v. State,* 907 S.W.2d 522, 530 (Tex.Cr.App.1995). However, it is left to the discretion of the trial court to initially determine whether such a bias exists and the court's decision will be reviewed in light of all of the answers given. *Id.* In deciding on the propriety of the court's ruling on challenges for cause during *voir dire,* we keep in mind that the trial judge has had the opportunity to observe the tone of voice and demeanor of the prospective juror in determining the precise meaning intended, while we have only the "cold record." *Briddle v. State,* 742 S.W.2d 379, 384 n. 1 (Tex.Cr.App.1987), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *Mowbray v. State,* 788 S.W.2d 658, 666 (Tex.App.—Corpus Christi 1990, pet. ref'd), *cert. denied,* 498 U.S. 1101, 111 S.Ct. 999, 112 L.Ed.2d 1082 (1991). Absent a clear showing that the trial court abused its discretion, its decision should not be disturbed on appeal. *See Mowbray,* 788 S.W.2d at 666.

During the initial stages of *voir dire,* the Court asked if anyone knew Appellant personally. Phillips responded, stating that he was a longtime friend of Appellant's father and that certain members of their families were married to each other. He told the court that he wouldn't "want the pressure" of being a juror in the case, and that his relationship might affect his judgment. Phillips was later questioned individually, and the exchange is set forth, in pertinent part, as follows:

COURT: Mr. Phillips, I think in response to a question that—there were several questions asked, but one of them was that you knew family members of the Defendant; is that correct?

MR. PHILLIPS: Yes. That is correct.

COURT: And I think you made a statement you didn't want the pressure of being on a jury.

MR. PHILLIPS: Yes.

COURT: And I understand that. But my question to you is, if you are chosen as a member of this jury, can you make your decisions based only on the evidence presented in this courtroom, or is that relationship with his family going to somehow influence your decision-making in the case?

MR. PHILLIPS: I'm afraid that there is such a possibility that it would until I'm not sure I would want to be put into that position.

COURT: And so are you telling the Court that you believe that that relationship might in some way affect your ability to be completely fair and impartial to both the State and the Defense?

MR. PHILLIPS: Yes, ma'am, I am.

COURT: All right. Any additional questions, then, from the State?

[STATE]: Just briefly, your Honor. Mr. Phillips, I asked you about being friends with the Defendant's family, and you know, that's fine. You say that you're just such good friends with the family that you'd be a better juror on a different kind of case; is that right?

MR. PHILLIPS: Not only just because of friendships. I'm saying that they are—there is a member of my family who is married to a member of that family. And in the course of our relationship from that standpoint also, I would not feel comfortable, you know, if the outcome—let's say of having been a part of the jury.

. . . . .

[DEFENSE COUNSEL]: Mr. Phillips, I don't mean to belabor the point, but I've got about three or four questions to ask you.

If you were on the jury, and you believed that the State had proved its case by legal and competent evidence beyond a reasonable doubt, are you telling me that you simply could not vote to find the Defendant guilty of anything?

MR. PHILLIPS: No. I'm not telling you that if I was on the jury—yes, I would—I could vote—

[DEFENSE COUNSEL]: Are you telling me that if the Judge instructed you to base your decision on the evidence which you have heard in the courtroom and on the law that she gave to you, are you telling me that you could do that if she told you to?

MR. PHILLIPS: Yes, if I was on the jury, yes, I think I could do that. I think I could, but then, I—I would not want to be put into a position where there was a possibility that I couldn't—that I wouldn't say—and I certainly wouldn't volunteer for it.

[DEFENSE COUNSEL]: If I understand your position—and correct me if I'm wrong—it is that I could do the job if I were a juror, but I really don't want to.

MR. PHILLIPS: That is partially right.

[DEFENSE COUNSEL]: Okay. Would you flesh it out for me.

MR. PHILLIPS: All right. I'm saying that if it was imperative that I become a juror, this was a job I had to do, yes, I can do it. But unless it was of such a nature that I had to do it, then I would not want to do it.

[DEFENSE COUNSEL]: In other words, if you got drafted, you could serve your country, but you wouldn't really want to go out and volunteer?

MR. PHILLIPS: That's exactly right.

[DEFENSE COUNSEL]: If you got drafted into it, you would do just as good job as anybody else there?

MR. PHILLIPS: Yes.

[DEFENSE COUNSEL]: And if the Judge told you to base your decision on the law that she gave you and on the evidence that you heard in open court, you could follow that and do your job as a juror?

MR. PHILLIPS: Yes.

The court noted a slight conflict in Phillips' answers, and engaged in the following exchange to finally determine whether Phillips could serve "as a completely fair and impartial juror to both the State and the Defense":

[COURT]: ... [I]f you are chosen to serve as a member of this jury, are you going to be able to make decisions in this case based only on the evidence presented in the Court and the law that I give you, or is your relationship with the Defendant and the family going to somehow influence you serving as a member of the jury? And I just need to know one way or the other.

MR. PHILLIPS: All right. I can understand how you see a conflict there.

I'm saying if I was put in that position where there was no alternative, I'm saying where there is no alternative, then I won't be put in that position, so—if there is an alternative, let's say, then, that I am afraid that I would still base my decision or it would influence my decision, my situation.

The State then moved for Phillips to be excused for cause based upon his bias in favor of Appellant, and upon his inability to be fair and impartial. The court granted the State's motion.

Based on our review of the entire *voir dire* examination of Phillips, we hold that Phillips' bias was established as a matter of law. He repeatedly maintained that he would be influenced by his relationship with Appellant's family, and asked that he not be placed in that position. He concluded by telling the court that he feared the relationship "would influence my decision."

 Phillips also stated to defense counsel that he could set aside his relationship with Appellant's family if it was absolutely necessary; however, these statements would not overcome the bias expressed by Phillips. When the feeling expressed by a prospective juror is one of bias or prejudice in favor of or against the defendant, it is not ordinarily deemed possible for such a juror to be qualified by stating that he can lay aside such prejudice or bias. *Smith*, 907 S.W.2d at 530; *Williams v. State*, 565 S.W.2d 63, 65 (Tex.Cr.

App.1978). Thus, the trial court did not err in granting the State's challenge for cause.

Even if we held that Phillips' bias had not been conclusively established, the record does not support a finding that the trial judge abused her discretion. The record reflects that Phillips had a strong relationship with Appellant's family. Although he stated that he could serve on the jury if it was absolutely necessary, he nevertheless maintained that he would have extreme difficulty setting aside his feelings. When faced with an equivocal venireperson, this Court will accord great deference to the trial judge who had the better opportunity to see and hear the person. *Mooney v. State,* 817 S.W.2d 693, 701 (Tex.Cr.App.1991). Considering the totality of Phillips' answers, we find no abuse of discretion in the trial court's ruling. *Sawyers,* 724 S.W.2d at 32. Point three is overruled.

In his fourth point of error, Appellant contends that the trial court erred in granting the State's challenge for cause to Herminia Steele. He again argues that the State did not show sufficient bias to sustain the challenge. *See* TEX.CODE CRIM.PROC. ANN. art. 35.16(a)(9) (Vernon 1989). We disagree.

During the course of *voir dire,* the State asked if anyone on the panel had a family member that had been arrested, charged or convicted of a criminal offense. Although several venirepersons responded, Steele remained silent. After the general *voir dire,* Steele was individually questioned because she indicated that she had heard something about the case on television. During her individual *voir dire,* the State asked Steele if she knew a man named Lester Steele, and she stated that he was her husband. The State then asked if he had ever been in any trouble or been arrested, charged, or convicted of a criminal offense. Steele stated that "he's been in trouble more than once." She recalled an arrest from several years ago, and a more recent occurrence in which she had called the police, and her husband argued with the officers. She thought that the most recent trouble occurred while her husband was on probation.

When the State asked her why she had not revealed the information when the question was asked during general *voir dire,* she stated that she knew the State already had the information, and would ask her if they wanted more details. The State then moved for Steele to be excused for cause because she was unfit to serve as a juror in that she was unwilling to follow the court's instructions to answer the *voir dire* questions truthfully and completely. The State also argued that Steele possessed an unspoken bias against the State. The court granted the State's motion.

A challenge for cause can properly be asserted on grounds which are not specifically enumerated in Article 35.16 where such a challenge is based on facts that show that the prospective juror would be "incapable or unfit to serve on the jury." TEX.CODE CRIM.PROC.ANN. art. 35.16(a) (Vernon 1989). *See Allridge v. State,* 850 S.W.2d 471, 484 (Tex.Cr.App.1991), *cert. denied,* 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). These challenges, which are not based upon any ground specifically enumerated in the statutes, are ordinarily addressed to the sound discretion of the trial judge. *Allridge,* 850 S.W.2d at 485.

In the instant case, the record of the *voir dire* supports the trial court's conclusion that Steele's unwillingness to follow the court's instructions and give full and complete answers during *voir dire* rendered her unfit for service on the jury. It further supports the trial court's finding that Steele was biased against the law upon which the State and defense are entitled to rely, namely, the law pertaining to her duty to follow her oath as a juror, since she disregarded the judge's instructions during *voir dire. See* TEX.CODE CRIM.PROC.ANN. art. 35.16(b)(3) (Vernon 1989) ("a challenge for cause may be made by the State ... [if the juror] has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment"). The trial court did not abuse its discretion in granting the State's challenge for cause of Steele. Point of error four is overruled.

The judgment of the trial court is af-firmed.