In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00045-CR


______________________________




RUSSELL LYNN STRACENER, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 8th Judicial District Court


 Hopkins County, Texas


Trial Court No. 0719499




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Russell Lynn Stracener had previously been placed on deferred adjudication community
supervision under a plea agreement that provided for three charges of indecency with a child to be
reduced to a single plea of guilty to a charge of mental injury to a child. Stracener has now been
adjudicated guilty by the trial court. (1) On appeal, Stracener asserts that the evidence was not legally
and factually sufficient to support the finding that he violated conditions of his community
supervision and that two conditions later were improperly added to his community
supervision--passing periodic polygraph tests and successfully completing counseling as a sex
offender.

 Stracener does not dispute the State's allegation that he failed to timely perform the two
unquestionably valid conditions of his community supervision--doing sixteen hours of community
service during November 2007 and timely paying a $50.00 Crimestoppers fee. Instead, he offers
explanations of why he did not comply with those terms.

 Because of Stracener's lack of community service in November 2007 and his failure to timely
pay the Crimestoppers fee, we will affirm the judgment of the trial court without addressing or
endorsing the subsequently added terms concerning polygraph examinations and sex offender
counseling.


Background

 Stracener's original terms of community supervision required him to "[p]erform 240 hours of
community service work at the rate of 16 hours per month,"[s]ubmit to and pass . . . polygraph testing
at the request of the CSO/field officer," and "[p]ay a one time crimestoppers fee of $50.00 within 60
days of the date of this order through the CSCD." Stracener received the order containing these
conditions, stated he had no questions about the requirements, affirmed that he understood them,
could live up to them, and signed the order imposing the conditions. 

 Shortly thereafter, and without a hearing, the trial court amended Stracener's conditions of
supervision. These conditions, apparently motivated by the sex offenses that were dismissed under
the plea agreement, required Stracener to "attend, actively participate, and successfully complete
psychological counseling with a State Licensed Sex Offender Treatment Provider and pay all
associated costs." Stracener received the amended conditions of supervision, but wrote "refused" on
his signature line because he did not agree with the amendment. Nevertheless, he attended and paid
for counseling. 

 A few months later, the State filed a motion to proceed with adjudication of guilt based on
Stracener's failure to perform community service in November 2007, pay the Crimestopper fee on
time, and pass the polygraph examination. The motion also claimed that he violated the amended
condition of community supervision because he was unfavorably discharged from sex-offender
counseling. Stracener filed a motion to quash the proceeding, claiming that the polygraph results
were inadmissible and that the unilateral and after-the-fact amendment of his community supervision
conditions was illegal. He also argued that he was prevented from timely paying the Crimestopper
fee by the clerk and that his community service was not completed because he was required to attend
and pay for counseling and because he was sick.

 With respect to the condition requiring community service work at the rate of sixteen hours
per month, the trial court heard undisputed evidence that Stracener failed to perform any of his
required community service for the month of November 2007. Stracener had several reasons to
justify his failure. First, he claimed the work was not completed because he was working for his
father to get the money to pay his fees. (2) However, he later stated the money to pay all November fees
was borrowed from his father, thus undermining that reason for not completing the November hours
of community service. Next, while Stracener admitted he could have performed community service
hours during the first three weeks of November, he saved the work for the last week and then became
sick. Stracener's father said he could not perform the required hours because he was "sick around
Thanksgiving" with "some kind of stomach virus." Stracener's community supervision officer and
counselor, Jerry Beare, recalled that although Stracener's wife called to report he was ill in December,
he did not appear to be sick in November during the required Tuesday meetings. Offering a third
explanation, Stracener claimed supervision officer Joseph Flemens excused his November hours and
gave him an opportunity to make up the community service later in the year. Flemens testified he had
no authority to modify the trial court's order.

 Undisputed evidence demonstrated Stracener failed to pay the Crimestopper fee within sixty
days of the order of community supervision, even though he had the financial means to do so. As a
defense, Stracener claimed that he tried to pay the Crimestopper fee three times, but that the clerk
would not accept the money, gave it back to him, and told him he did not owe it. She finally accepted
the money, after the end of the sixty-day time frame mandated by the court. On cross-examination,
Stracener admitted that he knew the clerk would have taken the money and applied it to another
payment even if he had overpaid. 

 Next, over objections that polygraph results were inadmissible, undisputed evidence of failure,
including Stracener's admission that "I have never been able to pass [a polygraph test] so far" was
admitted. To provide justification, Stracener said he failed the last polygraph test because the
examiner upset him when he "jumped up at me and started, you know, raking me over the coals about
the way I looked at him." 

 Finally, with respect to the requirement to complete counseling, the trial court heard
undisputed evidence that Stracener was unfavorably discharged. He was required to attend class
every Tuesday night unless there was a conflict. Beare testified that Stracener "from day one, has
failed to engage in the therapeutic process . . . . There was one incident in which he showed up with
a tape recorder trying to record the meeting." Beare required Stracener to sign a waiver of
confidentiality that would allow him to speak with family members, employers, and neighbors. Even
after explaining that Beare would have to discharge him unless the confidentiality waiver was signed,
Stracener refused to sign. As a result, Stracener was unfavorably discharged from counseling. Beare
also declared Stracener's "participation was adversarial. He was not wanting to cooperate but rather 
- -it was my belief that Mr. Stracener would rather destroy or bring down the group than to be a
recipient of the benefits of the group." Beare had never seen that level of resistance to the program. 

 We review a decision to adjudicate guilt as we review a decision to revoke community
supervision. (3) Tex. Code Crim. Proc. Ann. art 42.12, § 5(b) (Vernon Supp. 2009). While a decision
to revoke community supervision rests within the discretion of the trial court, it is not absolute. In
re T.R.S., 115 S.W.3d 318, 320 (Tex. App.--Texarkana 2003, no pet.). To revoke community
supervision, the State must prove every element of at least one ground for revocation by a
preponderance of the evidence. Tex. Code Crim. Proc. Ann. art. 42.12, § 10 (Vernon Supp. 2009);
T.R.S., 115 S.W.3d at 320; Johnson v. State, 943 S.W.2d 83, 85 (Tex. App.--Houston [1st Dist.]
1997, no pet.). "'Preponderance of the evidence' has been defined as the greater weight and degree
of credible testimony." T.R.S., 115 S.W.3d at 320. In other words, if the greater weight of credible
evidence in this case created a reasonable belief that Stracener violated a condition of community
supervision, the standard was met. Id. at 321 (citing Martin v. State, 623 S.W.2d 391, 393 n.5 (Tex.
Crim. App. [Panel Op.] 1981).

 In a revocation hearing, the trial court is the sole trier of the facts and determines the
credibility of the witnesses and the weight to be given to the testimony. T.R.S., 115 S.W.3d at 321;
Lee v. State, 952 S.W.2d 894, 897 (Tex. App.--Dallas 1997, no pet.); Johnson, 943 S.W.2d at 85. 
The court may accept or reject any or all of a witness' testimony. T.R.S., 115 S.W.3d at 321 (citing
Mattias v. State, 731 S.W.2d 936, 940 (Tex. Crim. App. 1987)).

 Considering the unique nature of a revocation hearing and the trial court's broad discretion in
the proceedings, the general standards for reviewing factual sufficiency do not apply. Pierce v. State,
113 S.W.3d 431, 436 (Tex. App.--Texarkana 2003, pet. ref'd). Instead, we review the trial court's
decision regarding community supervision revocation for an abuse of discretion, and examine the
evidence in a light most favorable to the trial court's order. T.R.S., 115 S.W.3d at 321; Pierce, 113
S.W.3d at 436 (citing Garrett v. State, 619 S.W.2d 172, 174 (Tex. Crim. App. [Panel Op.] 1981)). 
Thus, if the greater weight of credible evidence creates a reasonable belief that a defendant has
violated a condition of his or her community supervision, the trial court's order of revocation did not
abuse its discretion and must be upheld. Pierce, 113 S.W.3d at 436 (citing Scamardo v. State, 517
S.W.2d 293, 298 (Tex. Crim. App. 1974). If the State's proof is sufficient to prove any one of the
alleged community supervision violations, the revocation should be affirmed. T.R.S., 115 S.W.3d at
321 (citing Stevens v. State, 900 S.W.2d 348, 351 (Tex. App.--Texarkana 1995, pet. ref'd)).

 An award of community supervision is not a right, but a contractual privilege entered into
between a court and a defendant. Speth v. State, 6 S.W.3d 530, 533-34 (Tex. Crim. App. 1999). For
this reason, the law is well settled that conditions of community supervision not objected to are
affirmatively accepted as terms of the contract. Id. at 534-35; Manuel v. State, 994 S.W.2d 658,
661-62 (Tex. Crim. App. 1999); Vale v. State, 486 S.W.2d 370 (Tex. Crim. App. 1972). Since
Stracener did not object to the conditions requiring him to pay the Crimestopper fee and perform
community service according to the schedule ordered by the court, he was bound to perform them or
be subject to adjudication.

 Flemens testified Stracener failed to pay the Crimestopper fee within sixty days of the order
of community supervision and also failed to complete the required sixteen hours of community
service for November 2007. Stracener did not contest this fact. Instead, he provided several reasons
to justify his noncompliance with the court's order. Since the trial court was the sole trier of the facts
and credibility, he was free to reject all of Stracener's testimony as incredible excuses. T.R.S., 115
S.W.3d at 321; Johnson, 943 S.W.2d at 85. Reviewing the evidence in a light most favorable to the
verdict, we conclude the record is sufficient to support a trial court's reasonable belief that Stracener
violated either of these conditions of community supervision. Thus, we cannot say the trial court
abused its discretion or acted without reference to guiding rules and principles. The order of
adjudication must be upheld. (4)


 We affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 16, 2009

Date Decided: October 21, 2009


Do Not Publish
1. Stracener has been sentenced to twelve years' imprisonment and ordered to pay a $1,000.00
fine. 
2. Stracener has worked for his father repairing pallets since 2006, without paying income
taxes. He took home about $300.00 per week. 
3. Thus, all standards will be discussed in terms of revocation of community supervision. 
4. Because the above violations are dispositive of Stracener's appeal, we expressly do not
address, and we should not be read as approving, the amendment of Stracener's conditions of
community supervision, without a hearing, to include sex-offender terms.



> Porter's points of error urging evidentiary insufficiency are overruled.

(2) The State Did Not Necessarily Comment on Porter's Failure To Testify

 Porter also contends the State twice impermissibly commented on Porter's failure to testify
in his own defense. "It is settled law that neither the trial judge nor the prosecution may comment
on the defendant's failure to testify, and that any such comment violates the Fifth Amendment
privilege against self-incrimination." Cruz v. State, 225 S.W.3d 546, 548 (Tex. Crim. App. 2007). To violate the right against self-incrimination, the offending language must be
viewed from the jury's standpoint and the implication that the comment referred to
the defendant's failure to testify must be clear. It is not sufficient that that language
might be construed as an implied or indirect allusion. The test is whether the
language used was manifestly intended or was of such character that the jury would
necessarily and naturally take it as a comment on the defendant's failure to testify. 
In applying this standard, the context in which the comment was made must be
analyzed to determine whether the language used was of such character.


Bustamante v. State, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

 The first challenged comment by the State occurred during the opening portion of the State's
summation:

We've proven to you that on the 26th day of September, 2005[,] Derrick Kennedy
was shot by a firearm. We don't have the firearm. There's only one person that
knows where the firearm is. We don't have it. We don't have to have it. We're not
talking about casings being hit on the back by a rock. You've got to have a firearm
to discharge it. We've got the casings that went into that young man's body and
ended his life. They were fired intentionally. They were fired knowingly. You don't
accidentally shoot a gun two times at somebody.


(Emphasis added.) The other asserted comment by the State came just before the case was submitted
to the jury:

Now, you heard enough testimony in cross-examination on scientific evidence to
kind of know where that is. Bottom line is, the experts told you what would or
wouldn't show [sic] and what they would need. We can't find the gun and I agree
there is one person that knows where that gun is. You know, what's the facts
surrounding this?


(Emphasis added.) Porter did not object to either argument at trial. 

 In Cruz, the State had argued, "They want to say that it's self-defense. Well, in order to have
self-defense, what has to happen is someone says, 'Yeah, I committed this crime. I committed this
murder. I did this and I intended to do this because I was in fear of my life.'" 225 S.W.3d at 547. 
This State's highest criminal court analyzed the context of that argument and held the State did not
impermissibly comment on the defendant's failure to testify because the argument at issue concerned
the verity of the accused's written statement to police and did not concern anything to which he failed
to testify at trial. Id. at 548-50.

 In the case at bar, we conclude the State's challenged arguments do not comment on Porter's
failure to testify. The State was summarizing all the evidence during the relevant portions of the jury
argument. By the time of closing argument, the jury had already seen videotapes of Porter's custodial
interviews, during which Porter repeatedly denied having ever owned or possessed a gun. Being
mindful of such interview evidence, we conclude that, from the jury's perspective, the State's
challenged arguments amount to reasonable comments on Porter's denials during those custodial
interviews about having ever possessed or owned a gun--claims that, based on the entire tenor of
the closing argument, the State clearly believed to be untrue. Cf. Coleman v. State, 881 S.W.2d 344,
358 (Tex. Crim. App. 1994) (four permissible areas of jury argument include summation of
evidence, reasonable deductions from evidence, answer to argument of opposing counsel, and plea
for law enforcement). The challenged arguments are not comments on Porter's failure to testify at
trial.

(3) Ineffective Assistance of Counsel Has Not Been Shown

 Porter also contends his trial counsel provided ineffective assistance by (a) failing to request
a charge on sudden passion, (b) arguing Porter drew a pistol and shot Kennedy, (c) failing to elicit
available character evidence for the jury's consideration during the punishment phase, (d) failing to
object to the State's closing argument at guilt/innocence, and (e) failing to argue a two-shooter theory
to create reasonable doubt as to Porter's guilt. 

 (a) Failing To Request a Charge on Sudden Passion Was Not Ineffective

 Counsel did not request the trial court's punishment charge include a sudden-passion
instruction. At the hearing on Porter's motion for new trial, counsel admitted that the substance of
his punishment argument concerned a plea for mitigation in that Porter had acted under "sudden
passion." Porter's appellate counsel then asked trial counsel, "[I]f that is indeed what was behind
what you were getting at to the jury would it have not been better practice at the charge conference
on punishment to bring that up and request the court to include that as part of the charge to the jury?" 
Trial counsel responded, "Yes. I agree." Porter's appellate counsel then asked, "Can you give the
Court any reason here today as we sit here in terms of trial strategy or otherwise as to why you would
not have done that?" Trial counsel admitted, "No. I can't give the court a reason why I didn't do
that." This admission by his trial counsel forms Porter's first basis for claiming ineffective assistance
now on appeal.

 In this forum, the State suggests that a sudden-passion instruction would have been
inconsistent with Porter's general theory of the case. The State contends that "[a]n abrupt change in
theory in the midst of trial would not be credible." That may be a good general proposition, but such
an argument ignores the fact that trial counsel did, in fact, change his trial strategy in the middle of
the case--as evidenced by comparing the tenor of his closing argument on guilt/innocence with his
argument at punishment.

 The State also argues that the evidence did not support giving a sudden-passion instruction. 
To be entitled to a sudden-passion instruction, there must be evidence that the defendant caused the
victim's death while the defendant acted "under the immediate influence of sudden passion arising
from an adequate cause." Tex. Penal Code Ann. § 19.02(d) (emphasis added). The Texas Penal
Code further defines "adequate cause" as something "that would commonly produce a degree of
anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind
incapable of cool reflection." Tex. Penal Code Ann. § 19.02(a)(1). 

 In Willis v. State, 936 S.W.2d 302, 305 (Tex. App.--Tyler 1996, pet. ref'd), the defendant
was arguing with his stepson when the latter walked out of their home and broke out the windows
of the defendant's car. Willis then went to another part of the home and retrieved a gun, which the
defendant used to repeatedly shoot his stepson in the back. Id. at 305-06. In his videotaped
confession, Willis testified the shooting was in self-defense. Id. at 306. In holding that the issue of
sudden passion arising from adequate cause was not raised, the Tyler court noted that, in the
videotaped confession, the defendant never stated that the incident caused him to be afraid or angry
or that he acted under any emotional distress, and there was no other testimony to that effect. Id. at
309. Declaring that "we are not free to recognize the requisite heightened emotional state by
implication" and "[i]t is not enough to merely depict the defendant's physical behavior and the
physical context in which it arose," the Tyler court held that the issue simply was not raised. Id.

 In Saldivar v. State, 980 S.W.2d 475, 505 (Tex. App.--Houston [14th Dist.] 1998, pet. ref'd),
the defendant contended she was entitled to a charge on sudden passion arising from an adequate
cause because she had become enraged after the victim divulged that the victim's father had accused
Saldivar of embezzlement and lesbianism, which led to a continued argument in a motel room and
immediately escalated into a killing. Id. In holding that sudden passion arising from an adequate
cause was not raised, the Houston court admitted the victim initially provoked the defendant's anger. 
Id. at 506. However, the appellate court concluded Saldivar's testimony did not amount to evidence
of the extreme emotional and psychological state for which the definitions of sudden passion and
adequate cause call. Id. The court noted that, to justify a charge on sudden passion arising from an
adequate cause, the defendant's reactions to the triggering provocations must be an objectively
common response that an ordinary, reasonable person would make. Id. An aberrational response
to a stimulus that results in death will not meet the statutory definitions under chapter nineteen of
the Texas Penal Code. Id. In reaching its holding, the court stated, "Shooting an employer and
friend in the back as she walks away from an argument is not an objectively common response in
an ordinary reasonable person." Id.

 In this case, there is no evidence that the previous fight between Kennedy and Porter would
have produced a degree of anger, rage, or resentment in a person of ordinary temper to the necessary
degree that would cause such an ordinary person to lose his or her sensibilities and instinctively
respond by drawing a pistol and shooting Kennedy--especially when all the eyewitnesses said Porter
shot Kennedy after the fight had ended and the two had physically separated. In fact, during Porter's
jailhouse interviews, he repeatedly states he was unafraid of Kennedy (in light of the size differential
between the two) and was an otherwise peaceable man. Finally, Porter's own statement to police
shows he was the aggressor in the initial confrontation, a factor that some courts have said deprives
a murderer of the right to claim self-defense. See, e.g., Westbrook v. State, 846 S.W.2d 155, 159
(Tex. App.--Fort Worth 1993, no pet.) (defendant not entitled to sudden-passion instruction when
evidence showed he was initial aggressor).

 Because no evidence supports any claim that the shooting was produced by an adequate
cause, Porter would not have been entitled to an instruction on sudden passion. Cf. Adanandus v.
State, 866 S.W.2d 210, 230-31 (Tex. Crim. App. 1993) (evidence showed defendant shot victim
after scuffle between two had ended; victim in prone position and defendant in upright position when
fatal shot fired). Ineffective assistance based on this claim is unsupported by the record.

 (b) Counsel's Admission, During Punishment, that Porter Shot Kennedy Was Not
Ineffective


 Defense counsel's theory of the case during guilt/innocence was that Porter did not shoot
Kennedy. Counsel's theory of the case changed, however, once the trial went into the punishment
phase. In his punishment summation, Porter's trial counsel assumed the shooting and sought to
mitigate blame:

At some point, [Porter] snaps, loses his temper completely. Now, that's what
happens when you mix young men and firearms and violent physical confrontations. 
People lose their temper, they snap, they do things that on sober reflection they'd
never do. So that's what we have. We have one moment of extreme anger. And I'm
not putting all the blame on Derrick Kennedy. I'm not putting all the blame on Curt
Porter either, but what he did was wrong and deserves the punishment.


On appeal, Porter now argues that counsel's argument during punishment amounted to ineffective
assistance because such argument amounted to an admission of the crime.


 It is not unreasonable for a trial attorney to accept the jury's verdict on guilt/innocence and
try to mitigate punishment by arguing that the facts show the defendant acted not out of cold-bloodedness, but out of sudden whim. Such an argument might persuade a jury to assess punishment
at the lower end of the applicable sentencing range. The fact that such an argument did not work
here does not necessarily mean that the argument was devoid of a reasonable trial strategy; the result
(of Porter receiving a maximum punishment) merely means counsel's trial strategy did not work. 
We cannot say that no reasonable attorney would have employed such a strategy. As such, we
cannot conclude the record on this issue will support a finding of ineffective assistance.

 (c) Not Calling More Character Witnesses Was Not Ineffective

 Porter also claims he received ineffective assistance at trial because his trial counsel failed
to call more than one character witness on his behalf during punishment. The appellate record
shows that, during punishment, Porter's trial counsel called but one witness, Reverend Adrian Porter. 
At the hearing on Porter's motion for new trial, Porter called several more witnesses, each of whom
testified that he or she would have testified as character witnesses on Porter's behalf at the
punishment trial, if only they had been called. Porter's trial counsel explained that he called none
of these witnesses because he had instructed them each to be at Porter's trial by 8:30 on the morning
of the punishment trial and that none, except for Reverend Porter, arrived until after 9:00, which was
well after the punishment trial had begun. Because of their untimely arrival, Porter's trial counsel
did not have the opportunity to discuss their potential testimonies before calling them to the witness
stand. Additionally, the at-issue witnesses came into the courtroom during Reverend Porter's
testimony, "the rule" had been invoked by both sides in this case, and these witnesses had listened
to part of Reverend Porter's testimony. Porter's trial counsel testified to his belief that, by hearing
Reverend Porter's testimony, each witness had violated "the rule" and thus would have been excluded
by the State had Porter's trial counsel attempted to call any of them to testify. The only character
witness who had not violated "the rule" and who was in court at the proper time, Reverend Porter,
did testify on behalf of the accused. 

 The explanation by Porter's trial counsel on this issue portrays a reasoned trial strategy. 
While a different lawyer might have sought a waiver of "the rule" for these witnesses, there is no
evidence in the record that either the trial court or the elected district attorney (who was the lead
prosecutor in this case) would have allowed the witnesses to testify. We conclude the record before
us does not support Porter's claim of ineffective assistance on this issue.

 (d) Not Objecting to the State's Arguments Was Not Ineffective

 Porter next contends he received ineffective assistance from his trial counsel because the
latter did not object to the State's closing argument during guilt/innocence. The State's challenged
statements in this sub-issue are the same statements made by the State that were the subject of
Porter's point of error asserting that the State commented on Porter's failure to testify.

 We have already addressed the appropriateness of the State's challenged arguments during
guilt/innocence, and found that they presented no reversible error. Accordingly, we similarly
conclude Porter's trial counsel did not render ineffective assistance by failing to object to the State's
challenged arguments because such arguments (when viewed in context and from the perspective
of the jury) did not necessarily comment on Porter's failure to testify at trial, but instead permissibly
commented on evidence contained in Porter's custodial interviews.

 (e) Failure to Argue a Two-Shooter Theory During Guilt/Innocence Was Not Ineffective

 Finally, Porter contends his trial counsel provided ineffective assistance by failing "to argue
to the jury that the two bullets and two wounds raised a reasonable doubt about Appellant's guilt,
because that evidence points to the presence of two weapons and two assailants, not to Appellant." 

 The substance of an attorney's closing argument is inherently a product of trial strategy. See
generally Ramirez v. State, 229 S.W.3d 725, 730-31 (Tex. App.--San Antonio 2007, no pet.). 
Porter's trial counsel argued that the evidence was insufficient because the State's witnesses were
incredible, an argument that is both common among the defense bar of this state and entirely
reasonable based on the notable testimony adduced at trial on the lack of credibility of both Hodge
and Crump, the State's primary witnesses. Now, with the advantage of hindsight, appellate counsel
would now present a different theory of the case in an effort to create reasonable doubt among the
jurors' minds. Simply because a jury did not buy into a defense strategy does not mean the strategy
was flawed or substandard. Finally, we note that, even if we accepted Porter's claim that his trial
counsel's argument fell below professional norms, the record before us provides no evidence that
such argument necessarily prejudiced Porter. Cf. Ex parte McFarland, 163 S.W.3d 743, 758 n.50
(Tex. Crim. App. 2005) (capital murder habeas applicant did not demonstrate record established that,
but for counsel's allegedly inadequate closing argument, jury would have answered special issues
differently).

 We overrule this point of error.

(4) Denying Porter's Motion for New Trial Was Not Error

 Porter also contends the trial court erred by overruling his motion for new trial. Porter's
motion for new trial raised two issues: (A) ineffective assistance of trial counsel and (B) juror
misconduct. The trial court heard testimony on both issues at an evidentiary hearing on Porter's
motion. At the conclusion of the hearing, the trial court took the matter under advisement and later
summarily denied the motion without explanation. Porter now asserts the trial court should have
granted a new trial based on the proof of either ineffective assistance or juror misconduct.

 We review a trial court's ruling on a motion for new trial for abuse of discretion. Salazar v.
State, 38 S.W.3d 141, 148 (Tex. Crim. App. 2001). It should also be noted, however, that "both the
performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and
fact." Strickland v. Washington, 466 U.S. 668, 698 (1984); see also Williams v. Taylor, 529 U.S.
362, 419 (2000). Therefore, although we generally use an abuse-of-discretion standard to review
decisions to grant or deny motions for new trial, we are not bound by the trial court's conclusion
regarding effectiveness of counsel. See Strickland, 466 U.S. at 698; Johnson v. State, 169 S.W.3d
223, 239 (Tex. Crim. App. 2005). If the trial court is not in an appreciably better position than the
appellate court to determine an issue of ineffective assistance, the reviewing court may independently
determine the issue while necessarily affording deference to the trial court's factual findings. Miller
v. Fenton, 474 U.S. 104, 117 (1985); Villarreal v. State, 935 S.W.2d 134, 139 (Tex. Crim. App.
1996) (McCormick, P.J., concurring). 

 (a) Ineffective Assistance of Counsel Was Not Established

 We have addressed Porter's claims of ineffective assistance on their merits. On the same
basis as we stated above, we conclude the trial court was not bound to find ineffective assistance. 
We, therefore, conclude the trial court did not err by denying Porter's motion for new trial to the
extent that it was based on a claim of ineffective assistance of counsel.

 (b) The Trial Court Did Not Abuse Its Discretion on the Juror Misconduct Issue

 To his motion for new trial Porter attached affidavits from several trial spectators. The first,
Raven Covy, is Porter's fiancé. Covy testified that she observed one of Porter's jurors sleeping
during the trial. Another spectator, Vivian Porter, testified that he saw some of the jurors sleeping
during his grandson's trial. Porter's mother, Tumar Porter, similarly testified to having seen sleeping
jurors. 

 The trial court was in the best position to evaluate the credibility of the witnesses on this
issue and could also rely on its independent memory and observations of the jurors during trial. As
the trial court's decision to deny Porter's motion for new trial could have been based on either its
determination of witness credibility or the court's independent recollection of events (or both), and
because the trial court was in an appreciably better position both to determine witness credibility and
to observe the now at-issue jurors during trial, we must defer to such a determination and overrule
Porter's claim of error.

(5) Porter's Sentence Is Not Cruel and Unusual Punishment

 Porter also contends the jury's assessment of his punishment at life imprisonment constitutes
cruel and unusual punishment. Several considerations require us to overrule this contention.

 First, Porter's punishment fell within the range authorized by our law. He was convicted of
murdering Kennedy by shooting him with a firearm. Murder is a first-degree felony. See Tex.
Penal Code Ann. § 19.02(c). The punishment range for a first-degree felony is imprisonment for
life or for any term not more than ninety-nine years or less than five years. See Tex. Penal Code
Ann. § 12.32(a) (Vernon 2003). "Texas courts have traditionally held that as long as the punishment
is within the range prescribed by the Texas Legislature, the punishment is not excessive, cruel, or
unusual." Sierra v. State, 157 S.W.3d 52, 65 (Tex. App.--Fort Worth 2004), aff'd, 218 S.W.3d 85
(Tex. Crim. App. 2007); see also Jordan v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973);
Alberto v. State, 100 S.W.3d 528, 529 (Tex. App.--Texarkana 2003, no pet.). Because Porter's life
sentence fell within the statutory punishment range, his claim that his sentence constitutes cruel and
unusual punishment--and thereby violates the Eighth Amendment to the United States
Constitution--lacks support in our jurisprudence. See U.S. Const. amend. VIII.

 Second, to determine whether Porter's life sentence is cruel, unusual, or similarly
disproportionate, evidence in the appellate record would be needed regarding what sentences other
Texas defendants have received for murder. See Harmelin v. Michigan, 501 U.S. 957 (1991); Solem
v. Helm, 463 U.S. 277, 292 (1983). There is no such evidence in this appellate record. Nor is there
is any evidence in the appellate record of what sentences other defendants in other states have
received for murder. See Solem, 463 U.S. at 292. Thus, even if we were to ignore the appellate
jurisprudence of this State and conclude that a life sentence is necessarily too severe a punishment
to assess against someone convicted of murder, the appellate record contains insufficient evidence
for use in analyzing the remaining Solem factors to determine whether Porter's appellate record will
support a challenge to his sentence under the Eighth Amendment. Cf. Guin v. State, 209 S.W.3d
682, 687-88 (Tex. App.--Texarkana 2006, no pet.); Williamson v. State, 175 S.W.3d 522, 525 (Tex.
App.--Texarkana 2005, no pet.); Alberto, 100 S.W.3d at 530.

 Finally, the United States Supreme Court has repeatedly stated that the determination of
appropriate punishment ranges for felony offenses is a matter of legislative prerogative. See, e.g.,
Harmelin, 501 U.S. at 962 (Scalia, J., writing for the majority). To the extent Porter asks this Court
to effectively rewrite this State's punishment laws, we decline the invitation. Because Porter's
sentence fell within the applicable punishment range, his punishment presumptively passes muster
under the Eighth Amendment.

(6) The Trial Court's Judgment Is Not Void, But Should be Reformed

 Porter also contends "[t]he trial court reversibly erred when, in its judgment, it imposed
sentence under section 19.02(b)(1), Texas Property Code, thereby having no jurisdiction to
pronounce sentence, and, therefore, the judgment is void and of no effect." (Emphasis added.) 
While the written judgment cites to a nonexistent Section 19.02(b)(1) of the Texas Property Code,
the remainder of the judgment makes clear that Porter was convicted of murder. See Tex. Penal
Code Ann. § 19.02(b)(1) (one way to commit murder). The State contends the judgment's reference
to the Texas Property Code is merely a clerical error that can be reformed either on appeal or through
a nunc pro tunc judgment entered by the trial court. (3) 

 The State is correct. The trial court's judgment referencing Article 19.02 of the Texas
Property Code, rather than Section 19.02 of the Texas Penal Code, amounts to a mere clerical error
and is not the product of judicial reasoning. See Dudley, 223 S.W.3d at 722; and contrast Harris
v. State, 153 S.W.3d 394, 396-97 (Tex. Crim. App. 2005) (trial court's decision to increase sentence
by fifteen years after first sentence vacated on appeal, not permissible correction of unauthorized
sentence nor permitted revision of judgment via nunc pro tunc). We have the authority to reform
the trial court's judgment to reflect that the jury found Porter guilty of murder in violation of Section
19.02 of the Texas Penal Code. See, e.g., French v. State, 830 S.W.2d 607 (Tex. Crim. App. 1992);
Gonzalez v. State, 527 S.W.2d 540, 541 n.1 (Tex. Crim. App. 1975). Accordingly, the trial court's
judgment is reformed to reflect Porter was convicted for violating the Texas Penal Code rather than
the Texas Property Code. We otherwise overrule this point of error.

(7) The Trial Court Did Not Err in Failing to Issue, Sua Sponte, a Sudden-Passion Instruction

 Finally, Porter contends the trial court erred by failing to, sua sponte, instruct the jury on
sudden passion. We disagree.

 "If a defendant is convicted of murder, he or she may argue at punishment that he or she
caused the death of the victim while under the immediate influence of sudden passion arising from
adequate cause." Bradshaw v. State, No. 06-06-00178-CR, 2007 WL 4224853, at *1 (Tex.
App.--Texarkana Dec. 3, 2007, no pet.). "If a defendant establishes by a preponderance of the
evidence that he or she did so, the offense level is reduced from a first-degree to a second-degree
felony." Id. (citing Tex. Penal Code Ann. § 19.02; Trevino v. State, 100 S.W.3d 232, 237 (Tex.
Crim. App. 2003)). "'Sudden passion' means passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed which passion arises at
the time of the offense and is not solely the result of former provocation." Tex. Penal Code Ann.
§ 19.02(a)(2). "Adequate cause" is that "cause that would commonly produce a degree of anger,
rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of
cool reflection." Tex. Penal Code Ann. § 19.02(a)(1).

 In this case, the trial court could have reasonably concluded the evidence did not warrant a
sudden-passion instruction. Porter was the initial aggressor in the fight precipitating Kennedy's
death. Porter introduced a deadly weapon into the fracas. After he and Kennedy ended their scuffle,
Porter drew a gun and shot the unarmed Kennedy. Porter did not testify that he had acted out of
sudden fear, anger, or other emotion that was so intense that neither he nor any other normal human
being could have overcome such passion. Therefore, without such evidence coming from Porter or
some other source, the trial court had no evidence before it to mandate a sudden-passion instruction. 
We conclude the trial court did not err by failing to so instruct the jury.

 We reform the trial court's judgment to substitute "Penal Code" for "Property Code" and
affirm the judgment as reformed.


 

 Josh R. Morriss, III

 Chief Justice


Date Submitted: February 13, 2008

Date Decided: March 10, 2008


Do Not Publish


1. Crump testified that he called 9-1-1 for an ambulance following the shooting. Several others
testified about calling 9-1-1 after hearing the shooting. 
2. Miranda v. Arizona, 384 U.S. 436 (1966).
3. Neither party to this appeal has directed the Gregg County District Clerk to supplement the
record with a nunc pro tunc judgment from the trial court. See Hughes v. State, 493 S.W.2d 166,
170 (Tex. Crim. App. 1973) (trial court may issue judgment nunc pro tunc to correct clerical error);
State v. Dudley, 223 S.W.3d 717, 721-22 (Tex. App.--Tyler 2007, no pet.) (nunc pro tunc is correct
method for trial court to correct errors in judgment that are not product of judicial reasoning); see
also Tex. R. App. P. 34.5(c) (any party may request supplementation of appellate record). 
Accordingly, we assume this issue has not been made moot by the trial court's issuance of a corrected
judgment.