**Opinion issued June 30, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00486-CR

————————————

**MARK AUGUSTIN CASTELLANO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1363068**

---

## MEMORANDUM OPINION

Mark Castellano was convicted of murder and sentenced to 27 years' confinement.[1] In his first issue, he argues that he established as a matter of law his defensive assertion of sudden passion and, therefore, the jury's rejection of that

---

[1]  *See* TEX. PENAL CODE ANN. § 19.02 (West 2011) (murder).

mitigating theory requires reversal. In two additional issues, he contends that the trial court erred by (1) admitting extraneous-offense evidence without the State providing adequate notice and (2) refusing to instruct the jury on the lesser-included offense of criminally negligent homicide.

We affirm.

## Background

Castellano had been living with Michelle Warren and their three-year-old son in an apartment in Houston. When Michelle did not show up for a scheduled visitation with her older child, her ex-husband alerted her family. The family contacted Castellano, who told them that Michelle "left" after the two had an argument. The police began a missing person investigation.

Immediately after Michelle's disappearance, Castellano moved to Odessa with their son to live with his parents. The investigating officers contacted him and asked him to return to Houston to be interviewed. He agreed. The interview lasted a couple of hours. Eventually Castellano admitted that he caused Michelle's death and dumped her body in an oilfield in Midland.

In the recorded interview, which was played for the jury in its entirety, Castellano said that he was arguing with Michelle, she swung her hand at him, then he grabbed her neck and threw her onto the bed. At one point he said that he fell with her, twisted, heard a pop, her tongue stuck out, "and that was it. There was no

going back." At another point he said, "I grabbed her by the neck and before I knew it, I broke her neck or choked her or whatever." He also said that he "sat there and held it and by the time I realized what I did, she was dead." Finally, during a physical demonstration with the officers, he said he fell on her and crushed her windpipe, then was on top of her "for like a minute and a half or two" and "locked up," demonstrating his arms fully extended outward.

Castellano provided the officers with written directions to locate Michelle's body. The officers found her half-buried body where he had indicated. They also found Castellano's and Michelle's personal items in a dumpster near the home of Castellano's parents in Odessa.

The sole defense witness—a forensic engineer who specialized in biomechanical engineering, neuroelectrical engineering, and mechanical engineering—testified that his analysis of Michelle's injuries were consistent with Castellano's explanation. He opined that her injuries were consistent with sudden force being applied from the front of her neck and with a person falling on her. He testified that the physical evidence was inconsistent with prolonged squeezing of the neck because he did not find any evidence of force applied on the sides of her neck. However, he agreed that someone could be strangled from the front without applying pressure to the sides of the neck. Further, he testified that he was not qualified to give an opinion on the cause of death.

3

The Harris County assistant medical examiner testified that Michelle died from strangulation. She noted two fractures in her airway and petechiae markings on the skin, both of which, she stated, are consistent with strangulation. She testified that she found skin discoloration in the front and on the sides of the neck but not on the back, which she explained would be consistent with someone applying pressure from the front of the neck. In her opinion, it was unlikely that a person would die from being grabbed by the neck and thrown to the bed under someone else's weight—even if there was a "pop" sound—unless there was prolonged compression of the neck. The medical examiner also testified that Michelle's two fractures—one to her hyoid bone and the other to her cricoid cartilage—did not completely obstruct her airway; therefore, in the medical examiner's opinion, prolonged compression contributed to her death.

Castellano did not testify at his trial. The jury charge asked the jury to determine whether Castellano was guilty of murder, guilty of manslaughter, or not guilty (including by reason of self-defense). The jury found him guilty of murder. During the punishment phase of the trial, the jury was asked whether Castellano was under the immediate influence of sudden passion arising from an adequate cause; it concluded that he was not. The jury assessed punishment at 27 years' confinement and a fine; he appealed.

**Sudden Passion**

In his first issue, Castellano makes a legal sufficiency challenge to the jury's rejection of his sudden passion claim.

**A.      Statutory definitions of sudden passion and adequate cause**

Once a defendant has been found guilty of murder, the defendant may raise, during the punishment phase of the trial, as a sentence mitigation issue, whether he caused the death "under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d) (West 2011); *Wooten v. State*, 400 S.W.3d 601, 605 (Tex. Crim. App. 2013).

"'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed . . . which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2). "Anticipation of an event and preparation of a response indicates a defendant had time to deliberate over an action and did not act under the immediate influence of sudden passion." *Moncivais v. State*, 425 S.W.3d 403, 407 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

"'Adequate cause' means cause that would commonly produce a degree of anger, range, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN.

§ 19.02(a)(1). "Neither ordinary anger nor fear alone raises an issue on . . . adequate cause." *Moncivais*, 425 S.W.3d at 407.

If the defendant proves the issue by a preponderance of the evidence, the punishment range is reduced. TEX. PENAL CODE ANN. § 19.02(d); *Hernandez v. State*, 127 S.W.3d 206, 211 & n.1 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). "The defendant has the burden of production and persuasion with respect to the issue of sudden passion." *Wooten*, 400 S.W.3d at 605.

## B.    Standard of review

A defendant asserting that the evidence was legally insufficient to support the jury's rejection of the defendant's affirmative defense will be entitled to a new sentencing hearing if he establishes that the evidence "conclusively proves his affirmative defense and 'that no reasonable jury was free to think otherwise.'" *Matlock v. State*, 392 S.W.3d 662, 670 (Tex. Crim. App. 2013) (quoting *Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 830 (Tex. 2009)); *Cleveland v. State*, 177 S.W.3d 374, 387–88 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

This involves a two-step process: first, the reviewing court searches the record for evidence favorable to the jury's finding (to reject the affirmative defense), disregarding all contrary evidence unless a reasonable factfinder could not. *Matlock*, 392 S.W.3d at 670; *see Cleveland*, 177 S.W.3d at 387. If the reviewing court finds no evidence supporting the jury's finding, then the court

determines whether the contrary was established as a matter of law. *Matlock*, 392 S.W.3d at 671. If so, then there was legally insufficient evidence to support the jury's rejection of the defendant's sudden-passion assertion and a new sentencing hearing is warranted. *Id.*

## C. Legally sufficient evidence to conclude no adequate cause

To meet the definition of adequate cause, which is necessary for a finding of sudden passion, the provoking behavior must rise to a level that would "commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." TEX. PENAL CODE ANN. § 19.02(a)(1) (defining adequate cause). Mere yelling and pushing are not enough. *McKinney v. State*, 179 S.W.3d 565, 570 (Tex. Crim. App. 2005). An action that would elicit an ordinary level of anger does not qualify as an adequate cause for sudden passion. *Naasz v. State*, 974 S.W.2d 418, 425 (Tex. App.—Dallas 1998, pet. ref'd).

Castellano did not testify at trial. There were no other witnesses to his argument with Michelle to explain what happened. However, he did submit to a videotaped police interview, during which he described what occurred. The videotape was played for the jury. On the tape, Castellano explained to the investigating officer that Michelle yelled at him, called him names, and attempted to strike him with her hand. He explained that, in response, he grabbed her by the

7

neck, "broke her neck and choked her or whatever," threw her to the bed, and held her neck with his arms "locked" and fully extended for one to two minutes. During that process, he heard a "pop" sound and her tongue protruded. At another point in the interview, he explained what occurred as follows: "She and I got into a fight. I was tired of what she was doing to me and [our son]. I grabbed her by the neck and, before I knew it, I broke her neck or choked her or whatever, and her tongue was sticking out and that was it. There was no going back."

Castellano provided no evidence of additional provocation by Michelle beyond her yelling and insulting him. Thus, the record contains some evidence from which the jury could have determined that Castellano failed to prove an adequate cause for his sudden passion defense. *See Hernandez*, 127 S.W.3d at 213–14 (stating that "causes that would not render the ordinary person's mind incapable of cool reflection do not constitute adequate cause.").

On appeal, Castellano argues that adequate cause existed because of his past "issues" with Michelle, another witness's testimony about previously being assaulted by Michelle, and his explanation that he "lost it" during the argument. However, it was within the jury's province to reject these reasons as an adequate cause for sudden passion. *See e.g.*, *McKinney*, 179 S.W.3d at 570 (yelling and pushing are not adequate causes); *Gaston v. State*, 930 S.W.2d 222, 226 (Tex. App.—Austin 1996, no pet.) (concluding that wife's "nagging, taunting, and

promising a divorce and property squabble" are not adequate to cause requisite degree of emotion in person of ordinary temper to demonstrate sudden passion); *Willis v. State*, 936 S.W.2d 302, 308 (Tex. App.—Tyler 1996, pet. ref'd) (holding that, when adequate cause is absent, even extreme amount of passion will not meet requirements for sudden passion finding).

Having concluded that there is some evidence to support the jury's resolution of the issue, we do not reach the issue whether Castellano established his punishment-mitigation theory as a matter of law.

We overrule issue one.

### Extraneous-Offense Evidence

In his second issue, Castellano argues that he was provided insufficient notice of the State's intent to introduce extraneous-offense evidence through another former coworker, E. Johnson.

**A.    Applicable rule**

Rule of Evidence 404(b) concerns the admission of evidence of other crimes, wrongs, or acts and the notice the State is required to give criminal defendants of the extraneous-offense evidence:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes . . . provided that upon timely request by the accused in a criminal case, *reasonable notice is given in advance of trial* of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b)[2] (emphasis added). The rule is intended to prevent surprise and to allow a defendant to adequately prepare to defend against the extraneous-offense evidence. *Hernandez v. State*, 176 S.W.3d 821, 823–24 (Tex. Crim. App. 2005); *Hayden v. State*, 66 S.W.3d 269, 272–73 & n.16 (Tex. Crim. App. 2001).

**B.      Standard of review**

The trial court's ruling on the admissibility of extraneous-offence evidence is reviewed for an abuse of discretion. *De La Paz v. State*, 279 S.W.3d 336, 343

---

[2]      The Texas Rules of Evidence were recently restyled. 78 Tex. B.J. 374, 374 (2015). Rule 404(b) now reads as follows:

(b)      Crimes, Wrongs, or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses; Notice in Criminal Case. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. On timely request by a defendant in a criminal case, the prosecutor must provide reasonable notice before trial that the prosecution intends to introduce such evidence—other than that arising in the same transaction—in its case-in-chief.

TEX. R. EVID. 404(b), 78 Tex. B.J. 374, 384 (2015).

(Tex. Crim. App. 2009). Likewise, the trial court's determination of the reasonableness of the State's notice is reviewed for an abuse of discretion because the reasonableness of the notice depends upon the facts of each case. *See Henderson v. State*, 29 S.W.3d 616, 625 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd); *Webb v. State*, 36 S.W.3d 164, 178 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). In evaluating a challenge to the admission of extraneous-offense evidence, we may consider first whether the appellant has established harm necessary for reversal. *E.g.*, *Martines v. State*, 371 S.W.3d 232, 249 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

"The admission of extraneous offense evidence without proper notice is non-constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b)." *Id.* Under that standard, we disregard any error that does not affect the appellant's substantial rights. TEX. R. APP. P. 44.2(b); *McDonald v. State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005). An error does not affect an appellant's substantial rights unless it "had a substantial and injurious effect or influence in determining the jury's verdict." *Hernandez*, 176 S.W.3d at 824 (quoting *King v. State*, 953 S.W.2d 226, 271 (Tex. Crim. App. 1997)).

## C. State's notice

Approximately one month before trial, Castellano requested the State to provide notice of its intention to introduce evidence of extraneous offenses. The

11

State responded with an initial notice followed by a first amended notice that listed various extraneous offenses.

Jury selection occurred on May 20 and 21. Pretrial motions were heard on May 22. Then, on May 23, in its second amended notice, the State added an allegation that Castellano had told his former coworker, E. Johnson, that he wanted to kill Michelle, get custody of their son, and take the child to Odessa to live with Castellano's parents. The jury that was selected on May 20 and 21—before the second amended notice was given—was impaneled on May 27, and opening statements were made that same day.

Ten days after the second amended notice—on June 2—the State called Johnson as a witness. Castellano objected, specifically arguing that notice was not received until after the jury was picked, which precluded him from conducting a voir dire on this particular extraneous-offense evidence. The State responded that it did not become aware of Johnson's potential testimony until May 23 and that it gave Castellano notice of the extraneous-offense evidence that same day, though jury selection was already complete.

## D.    Harm not established

Because this issue may be resolved on the basis of harmless error, we turn to whether the alleged error affected Castellano's substantial rights, meaning whether

12

it "had a substantial *and injurious* effect or influence in determining the jury's verdict." *Hernandez*, 176 S.W.3d at 824 (emphasis added).

The purpose of Rule 404(b)'s notice requirement is to prevent a defendant from being surprised by extraneous-offense evidence and to ensure that he has time to prepare to counter the evidence at trial; it is not to protect the defendant from inadmissible evidence. *Id.* As explained by the Texas Court of Criminal Appeals, "[w]hen an appellate court determines that a jury's verdict was substantially influenced by the improper admission of *substantively inadmissible* Rule 404(b) evidence, that influence on the jury's verdict will always be '*injurious*' since there was no proper purpose for the jury to consider the evidence." *Id.* at 825 (emphasis added). However, when otherwise *substantively admissible* Rule 404(b) evidence is improperly admitted due to the State's lack of compliance with Rule 404(b)'s notice requirements, "the error in admitting this evidence may have had a *substantial* effect or influence on the jury's verdict, but it cannot be said that this effect or influence was '*injurious*' if the defendant was not surprised by the evidence." *Id.* (emphasis added). Stated differently, a defendant cannot establish Rule 44.2(b) harm from the admission of extraneous-offense evidence that would have been admissible but for late notice unless he can establish that he was surprised by the evidence. *Id.*

The extraneous-offense evidence from Johnson's testimony was substantively admissible. *See Berry v. State*, 233 S.W.3d 847, 858 (Tex. Crim. App. 2007) (holding that extraneous-offense evidence is admissible to establish intent). Thus, we consider whether Castellano has established harm.

A defendant can establish harm by demonstrating how his defense strategy might have been different had the State notified him that it intended to offer the extraneous-offense evidence. *Hernandez*, 176 S.W.3d at 826; *Allen v. State*, 202 S.W.3d 364, 369 (Tex. App.—Fort Worth 2006, pet. ref'd). In determining the evidence's effect, we review the record as a whole. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

According to Castellano, "[o]nly Mr. Johnson testified that Mr. Castellano had wanted to kill the complainant. . . . Without this testimony, there was a greater likelihood of acquittal or at least a finding of sudden passion at the punishment phase." He further contends that "it surely would have been a different voir dire" had he received sufficient notice, under Rule 404(b), of Johnson's testimony—which was inconsistent with his trial theory that he did not squeeze Michelle's neck or intend to kill her.[3]

---

[3] Castellano does not contend that he was unable to adequately prepare to cross-examine Johnson due to the timing of the State's Rule 404(b) notice.

Looking beyond Johnson's testimony, it is undisputed that the State provided Castellano timely notice of other extraneous-offense evidence relevant to his intent. He received timely notice that the State intended to offer testimony from J. Lindsey[4] that Castellano said "he would kill . . . Michelle. . . and that he would make her body disappear." He received timely notice that the State intended to offer testimony from R. Trinidad[5] that Castellano previously admitted to choking Michelle for eight seconds during an argument but let go "because he realized that he was choking her." He also received timely notice that the State intended to offer extraneous-offence evidence regarding an incident in which Castellano intended to hit Michelle with his car.

Thus, Castellano had notice before voir dire that the State intended to introduce evidence of past statements by Castellano that he intended to kill Michelle and past incidents involving Michelle in which Castellano engaged in conduct dangerous to human life. To the extent Castellano thought voir dire on his intent was necessary, timely notice of these other extraneous offenses sufficiently raised the issue to inform his trial strategy. That evidence of previously expressed intent to kill was ultimately admitted through different witnesses does not establish harm.

---

[4]    J. Lindsey did not testify.

[5]    R. Trinidad did.

15

Further, Castellano provides no explanation how his voir dire would have been different if he had notice of Johnson's proposed testimony. He never tendered to the trial court any additional questions he would have asked during voir dire or generally described how voir dire might have been different had he realized Johnson's testimony might be included in the trial.

Concluding that Castellano has not demonstrated an injurious effect to establish harm related to his claim of unreasonable notice under Rule 404(b), we overrule his second issue.

## Criminally Negligent Homicide

In his third issue, Castellano contends that the trial court erred by refusing to instruct the jury on the lesser-included offense of criminally negligent homicide.

## A.     Standard of review

We apply a two-step process to determine whether a defendant was entitled to an instruction on a lesser offense. *Cavazos v. State*, 382 S.W.3d 377, 382 (Tex. Crim. App. 2012). First, we determine whether the offense qualifies as a "lesser included offense" under Texas Code of Criminal Procedure Article 37.09. TEX. CODE CRIM. PROC. ANN. art. 37.09 (West Supp. 2014); *Sweed v. State*, 351 S.W.3d 63, 68 (Tex. Crim. App. 2011). This is a question of law. *Hall v. State*, 225 S.W.3d 524, 535 (Tex. Crim. App. 2007). Next, we determine whether there is some

evidence that would have permitted the jury to rationally find that, if the defendant was guilty, he was guilty only of the lesser offense. *Id.* at 536.

Although the threshold showing for an instruction on a lesser-included offense is low—more than a scintilla of evidence—the evidence must establish that the lesser-included offense is a valid and rational alternative to the charged offense. *Hall*, 225 S.W.3d at 536. "[I]t is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense; there must be some evidence directly germane to a lesser included offense for the factfinder to consider before an instruction on a lesser included offense is warranted." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim. App. 1994).

**B.     No evidence to support lesser-included-offense instruction**

Criminally negligent homicide is a lesser-included offense of murder. *Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000). A person commits criminally negligent homicide if he causes another's death by criminal negligence. TEX. PENAL CODE ANN. § 19.05 (West 2011). "Criminal negligence" occurs when a person ought to be aware of a substantial and unjustifiable risk such that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. TEX. PENAL CODE ANN. § 6.03(d) (West 2011).

"The key to criminal negligence is the failure of the actor to perceive the risk created by his conduct. Simply because appellant did not intend the result does not automatically entitle him to a charge on criminal negligence." *Trujillo v. State*, 227 S.W.3d 164, 168 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (internal citations omitted). In other words, to have an instruction on criminally negligent homicide, "the record must contain evidence showing an unawareness of the risk." *Jackson v. State*, 248 S.W.3d 369, 372 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). Therefore, we consider whether there was any evidence that Castellano was unaware of the risk created by his conduct.

The indictment alleged that Castellano caused Michelle's death by "placing his hands around [her] neck and squeezing." The medical examiner testified that Michelle died from prolonged squeezing of her neck. Despite Castellano's statement in the police interview that he "broke her neck and *choked* her or whatever," his trial theory was that he did not squeeze her neck at all. Instead, according to Castellano, he "grabbed" her neck, he fell, and the force of his weight instantly crushed her airway, causing her death. His only defense witness, a biomechanical engineer, testified that he saw no evidence of squeezing. He testified that there was no physical evidence of trauma on the sides or back of Michelle's neck, which, in his opinion, was consistent with Castellano's

18

explanation that he fell on Michelle and the force of his body weight to the front of her neck caused her injuries.

But none of that evidence is probative of whether Castellano was unaware of the risks involved in grabbing another's neck. *Cf. Thomas v. State*, 699 S.W.2d 845, 850 (Tex. Crim. App. 1985) (concluding that appreciation of risk of conduct is not diminished by lack of expectation that accident or involuntary action might make conduct more dangerous). Castellano offered no evidence that he was unaware of the risk created by his conduct.[6]

We conclude that the record does not contain more than a scintilla of evidence from which a rational jury could have concluded that Castellano failed to perceive the risk created by his conduct to find him guilty only of the lesser offense of criminally negligent homicide.

We therefore overrule this final issue.

## Conclusion

Having overruled all three issues, the judgment of the trial court is affirmed.

---

[6] In the recorded interview, Castellano said he was "choking" Michelle. Trinidad testified that Castellano admitted to him that he had choked Michelle in the past and did not release her until his anger subsided. This is some evidence that Castellano did appreciate the risk created by his conduct; he stopped choking her in the past, before she was seriously injured, even though he failed to do so this time.

19

                                        Harvey Brown
                                        Justice

Panel consists of Justices Jennings, Bland, and Brown.

Do not publish.  TEX. R. APP. P. 47.2(b).